[No. 15377.   In Bank.—October 14, 1893.]

## JULIUS JACOBS, Respondent, v. THE BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

Water Rates—Authority of Supervisors Exclusive—Mayor Without Veto Power.—The power to fix water rates in the City and County of San Francisco is vested solely in the board of supervisors of the city and county, and the mayor has no power to veto an order duly passed by the majority of the board fixing such rates.

Id.—Construction of Constitution—"Peremptory Process"—Action of Supervisors.—Sec. 1 of article XIV of the constitution providing for "peremptory process" to compel action of the supervisors fixing water rates should not be construed so as to compel the court to decree that the board of supervisors after having passed an ordinance fixing water rates shall act upon the objections of the mayor, and proceed to fix rates without any certainty that its action will not be again vetoed, and so on indefinitely, or to decree contrary to the principles regulating the writ of *mandamus,* that the supervisors shall abandon their judgment and make it conform to the opinion of the court or of any other person.

Id.—Mandamus May Compel but Not Control Exercise of Discretion.—*Mandamus* will lie to compel the exercise of discretion; but when discretion has been exercised, will not lie to control the judgment of an officer or tribunal having discretionary or judicial functions.

Id.—Judicial Action of Supervisors.—The board of supervisors acts judicially when fixing water rates, and where it has exercised its discretion in fixing the rates it cannot be compelled by *mandamus* to change its judgment or to take further action thereon.

Id.—Statutory Construction—Absurd or Inequitable Results to be Avoided.—A constitutional or statutory provision should be construed according to the intention of the law-making power, and not so as to lead to absurd or impractical results or to compel a court to decree a thing substantially impossible, or which is in plain violation of fundamental principles of law or equity unless the language absolutely requires such construction.

Id.—Grant of Power to Board—Majority to Act.—When a grant of power is made to several persons or to a board consisting of several per-

sons, the power is to be exercised by a majority of those persons, unless otherwise limited by the grant itself.

ID.—VETO POWER NOT FAVORED.—The veto power is to be recognized only where clearly granted, and is not to be favored by any strained construction.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*John Currey*, for Appellants.

The action of the board of supervisors in fixing water rates is in its nature judicial. (*Spring Valley Water Works* v. *Schottler*, 110 U. S. 354.) The mayor is no part of the governing body of San Francisco in respect to the fixing of water rates. (See *Spring Valley Water Works* v. *Board of Supervisors*, 82 Cal. 286; 16 Am. St. Rep. 116; Laws of 1881, p. 54; Consolidation Act, pp. 287, 288; Const., art. XIV.) The ordinance is not one providing for the expenditure of public moneys, which the mayor has power to veto. The fact that it may result in such expenditure does not necessarily make it an ordinance involving the expenditure. (*McDonald* v. *Dodge*, 97 Cal. 112; *State* v. *Henderson*, 38 Ohio St. 644, 647.)

*John Garber*, also for Appellants.

The mayor forms no part of the board of supervisors or the governing body of the city. (*McDonald* v. *Dodge*, 97 Cal. 112.) The provision of the constitution that the water rates shall be fixed by ordinance "in the manner that other ordinances" are passed, applies only to the mode and form of action, and does not extend so as to bring in some foreign person, like the mayor, to act on the ordinance. (*Volk* v. *Newark*, 47 N. J. L. 117.) The board of supervisors in fixing the rates acts judicially. (*Spring Valley Water Works* v. *Schottler*, 110 U. S. 354; *Mercantile Trust Co.* v. *Texas etc. Ry. Co.*, 51 Fed. Rep. 542; *Chicago etc. Ry. Co.* v. *Minnesota*, 134 U. S. 457.) The ordinance in question does not involve the "ex-

penditure of money." (*State* v. *Henderson*, 38 Ohio St. 644; *Trowbridge* v. *Newark*, 46 N. J. L. 140; *Preble* v. *Portland*, 45 Me. 241.) Where the constitution or any law commits a power to a designated body of men that means the majority, and changing that is not regulating the manner of the exercise, but it is changing the thing itself; and wherever any power is given to a board of supervisors or other governing body of a municipality, in the absence of express provision affixing the veto power to the exercise of it, it is not held to exist by the courts. The veto power is so inappropriate and inapplicable here that it will not be held to have been intended in the absence of explicit language to that effect in the constitution. (*City of Burlington* v. *Dennison*, 42 N. J. L. 167; 1 Dillon on Municipal Corporations, 208, 331; *Martindale* v. *Palmer*, 52 Ind. 411; *Smith* v. *City of Utica*, 6 N. Y. Supp. 792; *MacKenzie* v. *Wooley*, 39 La. Ann. 944; *Volk* v. *Newark*, 47 N. J. L. 117; *Town of Opelousas* v. *Andrus*, 37 La. Ann. 699; *National Bank* v. *Town of Granada*, 41 Fed. Rep. 91; *Stevenson* v. *Bay City*, 26 Mich. 48; *State* v. *Ames*, 31 Minn. 440; *Straub* v. *City of Pittsburgh*, 138 Pa. St. 356; *Hall* v. *City of Racine*, 81 Wis. 72; *Heiskell* v. *Mayor etc. of Baltimore*, 65 Md. 125; 57 Am. Rep. 308.)

*City and County Attorney Harry T. Creswell*, and *Pillsbury, Blanding & Hayne*, also for Appellants.

*Pierson & Mitchell*, and *Arthur Rodgers*, for Respondent.

The fixing of water rates by the board of supervisors is a legislative act. (*Spring Valley Water Works* v. *San Francisco*, 52 Cal. 111; *Spring Valley Water Works* v. *Bryant*, 52 Cal. 132; *Spring Valley Water Works* v. *Bartlett*, 63 Cal. 245; *Spring Valley Water Works* v. *San Francisco*, 82 Cal. 307; 16 Am. St. Rep. 116; *Sheward* v. *Citizen's Water Co.*, 90 Cal. 640.) As such the ordinance must be passed in the mode prescribed by law, and for that purpose must be presented to the president of the board for his approval. (*Creighton* v. *Manson*, 27 Cal.

630.) Wherever the charters of municipal corporations provide that ordinances or resolutions of a given character shall be presented to the mayor for his approval or veto, a formal, literal presentation must be shown. (*State* v. *Mayor etc.*, 25 N. J. L. 399; *State* v. *Carr*, 67 Mo. 38; *Saxton* v. *Beach*, 50 Mo. 488; *Irwin* v. *Devors*, 65 Mo. 625; *Saxton* v. *St. Joseph*, 60 Mo. 153; *Rutger's College Assn.* v. *New Brunswick*, 26 At. Rep 87; *Kepner* v. *Commonwealth*, 40 Pa. St. 130; 1 Dillon's Municipal Corporations, sec. 309; 17 Am. & Eng. Ency. of Law, 241; *People* v. *Russell*, 74 Cal. 578; *Twiss* v. *Port Huron*, 63 Mich. 528; *Whitney* v. *Port Huron*, 88 Mich. 268; 26 Am. St. Rep. 291; *People* v. *Schroeder*, 76 N. Y. 160.) The order in question required the approval of the mayor, or its passage over his veto, because it necessarily "involved the expenditure of public moneys." As to the meaning of involved see *Holman* v. *Taylor*, 31 Cal. 338; *Copertini* v. *Oppermann*, 76 Cal. 185; *Williams* v. *Western Union Tel. Co.*, 1 N. Y. Civ. Proc. Rep. 199; *Seale* v. *Doane*, 17 Cal. 476; *Herzo* v. *San Francisco*, 33 Cal. 134; *Stratton* v. *Green*, 45 Cal. 151; *Gilman* v. *Milwaukee*, 61 Wis. 588; *Fournier* v. *Mayor etc.*, 94 Mich. 463; *Zottman* v. *San Francisco*, 20 Cal. 96; 81 Am. Dec. 96.) The order in question is not valid without the approval of the mayor, because it grants a privilege. (See *San Francisco* v. *Spring Valley Water Works*, 48 Cal. 493; *San Jose Gas Co.* v. *January*, 57 Cal. 616; *People* v. *Stephens*, 62 Cal. 209; *McCrary* v. *Beaudry*, 67 Cal. 120, *Spring Valley Water Works* v. *Schottler*, 110 U. S. 347; 19 Am. & Eng. Ency. of Law, 120; Lewis on Eminent Domain, sec. 135; 3 Kent's Commentaries, p. 458.)

McFARLAND, J.—On March 27, 1893, the board of supervisors of the city and county of San Francisco passed an order—designated as Order No. 2622—fixing the rates of compensation to be collected by any person or corporation furnishing water for family uses, for private persons, and for municipal and public purposes, during the year commencing July 1, 1893, pursuant to section

1 of article XIV of the state constitution. The clerk of said board of supervisors presented said order to the mayor of said city and county, who refused to approve the same; and on April 7, 1893, he returned it to the board with a statement in writing of his objections thereto, showing that his views differed widely from those of the board upon the subject of proper water rates. At the first meeting of the board thereafter, viz., April 10th, the said board refused to enter the said objections of the mayor on its journals, and by resolution declared that said Order No. 2622 was not subject to the approval or veto of the mayor, or to the further consideration of the board, and that the jurisdiction and power to fix water rates were vested in the board of supervisors by said section 1 of article XIV of the constitution. Thereafter, Julius Jacobs, alleging himself to be a citizen and taxpayer, brought a proceeding in *mandamus* in the superior court to compel the said board of supervisors to "act upon the objections of said mayor," and "to proceed to fix said water rates" for the ensuing year. After a hearing, the superior court entered judgment decreeing that said Order No. 2622 was not a valid order without the approval of the mayor and without the vote of nine members of the board over the veto, and commanding the supervisors and each of them "forthwith to act upon the objections of the mayor," and "to forthwith proceed to fix the rates or compensation to be collected for the year commencing," etc. From this judgment the defendants appeal.

We are satisfied that the judgment of the court below is erroneous, and that the facts found do not make a proper case for the exercise of the extraordinary remedy of *mandamus.*

The clause of the constitution—section 1, article XIV—under which it is sought to justify the judgment in the *mandamus* proceeding is as follows: "The use of all water now appropriated, or that may hereafter be appropriated, for sale, rental, or distribution, is hereby declared to be a public use, and subject to the

regulation and control of the state, in the manner to be prescribed by law; *provided,* that the rates or compensation to be collected by any person, company, or corporation in this state for the use of water supplied to any city and county, or city or town, or the inhabitants thereof, shall be fixed annually by the board of supervisors, or city and county, or city or town council, or other governing body of such city and county, or city or town, by ordinance or otherwise, in the manner that other ordinances or legislative acts or resolutions are passed by such body, and shall continue in force for one year and no longer. Such ordinances or resolutions shall be passed in the month of February of each year, and take effect on the first day of July thereafter. Any board or body failing to pass the necessary ordinances or resolutions fixing water rates where necessary, within such time, shall be subject to peremptory process to compel action at the suit of any party interested, and shall be liable to such further processes and penalties as the legislature may prescribe. Any person, company, or corporation collecting water rates in any city and county, or city or town in this state, otherwise than as so established, shall forfeit the franchises and water works of such person, company, or corporation, to the city and county, or city or town, where the same are collected, for the public use."

The city and county of San Francisco is a consolidated government, its charter being the "Consolidation Act" passed in 1856. Under that act the board of supervisors is the legislative department of the municipal government; although it is provided therein that ordinances upon certain enumerated subjects shall not be effective unless approved by the mayor (whose office was created by said act), or unless, after his veto, nine members of the board shall vote therefor. Under the act, however, there are many things which the board may do without the concurrence of the mayor; and there are many powers which the mayor may exercise independently of the board. Under this condition of

the law respondent contends that said section 1 of the constitution should be construed to mean that the mayor has the legal right to veto a water order; and that, under the facts above stated, a court can by *mandamus* compel the board of supervisors to refix water rates continuously, unless they either yield to the views of the mayor or are able by a three-fourths vote to override the veto.

Constitutional and statutory provisions are subject substantially to the same rules of construction; the main object being in all cases to ascertain the meaning of the lawmaker. A constitution "must be read, interpreted, and expounded in the same manner, by the same means and methods which are appropriate to all other legislative acts." (Pomeroy's Constitutional Law, p. 14.) Now it is clear that there should be no such a construction of language as would lead to absurd or impracticable results, or compel a court to decree a thing substantially impossible, or which is in plain violation of fundamental principles of law or equity firmly established and universally recognized, unless such language absolutely requires such construction. The judgment in the case at bar first commands appellants "to act upon the objections of the mayor," which, we presume, means to vote formally on the question whether the veto shall be sustained; and then, assuming that there may not be nine votes in favor of the order, commands them forthwith to "proceed to fix the rates." If they should vote on the veto, and a majority of the supervisors, but not nine, should vote for the order, of course, under the judgment, they would be compelled to "proceed" and pass another order, and if that should be vetoed with the same result, then another, and another, and so on indefinitely. So that if the board should not yield its views to those of the mayor there could be no legal fixing of water rates at all. But the section of the constitution in question provides that the water rates "*shall* be fixed annually," to commence on July 1st, and that "any board or body" failing to do so shall be subject to process to compel action, and that any person collecting

water rates otherwise than as so fixed annually shall suffer certain penalties and forfeitures. If such a construction does not involve a palpable absurdity, or an attempt to accomplish an absolute impossibility, it certainly does lead naturally and probably to what is substantially impracticable, and to a failure to consummate the purpose of the constitutional provision under review. Fixing water rates is an entirely different thing from passing or refusing to pass a proposed order or ordinance which merely involves ordinary considerations of public policy, and is not an absolute necessity. The constitution requires that the rates *shall* be fixed annually in February, and that if they be not fixed there shall be no sale of water to the inhabitants of the city after the ensuing 1st of July, by any person, company, or corporation. To do this in a large city like San Francisco, as appears from the Order No. 2622, and the lengthy objections of the mayor thereto contained in the transcript, is a laborious and complicated task, and one about which there is always likely to be great differences of opinion; and the notion that the framers of the constitution meant that this should be accomplished in a short space of time by two independent bodies agreeing upon every detail of the work, and that a court of justice should compel them to thus agree, or rather should compel one to adopt the views of the other, is not to be entertained for a moment unless it be the necessary and absolute result of the language employed.

Moreover, the construction contended for by respondent violates the well-settled, long recognized and fundamental principles which have always limited and governed the jurisdiction of courts in the proceeding of *mandamus;* and a design to undermine and unsettle those principles is not to be implied by any construction not forced by imperative language. It is, beyond doubt, the universal rule that *mandamus* will not lie to control the judgment of an officer or tribunal to whom is given discretionary power—the power to examine, consider and determine. In such a case the writ can be used only **to**

compel the exercise of discretion; but when the discretion has been exercised the writ cannot be used to compel a party to abandon his own judgment, and to make it conform to the judgment either of the court or of some other person.   Every case where a party has been commanded by *mandamus* to do an act has been a case where the act was definite, certain and fixed, and where its character and scope, and the result to flow from it, were as well known before the doing of the act as afterwards, as, for instance, when a municipal body has been commanded to provide for the payment of a judgment for a certain and definite amount.   But no court in the course of the history of our jurisprudence has ever undertaken to control action by *mandamus* when the thing to be done was judicial in its nature, when the person or tribunal was "to hear and determine," and to come to a conclusion by the exercise of judgment and discretion, and when the result was not fixed and known beforehand.   This principle was declared by this court as early as the fourth volume of reports, as follows: "Whenever a discretionary power is vested in officers, and they have exercised that discretion, the courts will not interfere, because they cannot control and ought not to coerce that discretion." . . . . *McDougall* v. *Bell*, 4 Cal. 177; and it has been applied here in many subsequent cases.   In High's Extraordinary Remedies, sec. 24, the author, after stating the rule substantially as above, says: "It applies with especial force to cases where the aid of *mandamus* is sought against inferior courts or judges, public officers, municipal authorities and corporate officers generally, and in all these cases it is the determining principle in guiding the courts to a correct decision.   And whenever such officers or bodies are vested with discretionary power as to the performance of any duty required at their hands, or where in reaching a given result of official action they are necessarily obliged to use some degree of judgment and discretion, while mandamus will lie to set them in motion and to compel action upon the matters in controversy,

it will *in no manner* interfere with the exercise of such discretion, nor *control* or dictate the judgment or decision which shall be reached." And that the supervisors act judicially when fixing water rates, that in performing that duty they should hear the parties interested, fairly weigh the evidence presented, and decide property rights according to their honest convictions and best judgment, is not only clear from the very nature of the thing to be done, but was expressly declared by the Supreme Court of the United States in *Spring Valley Water Works* v. *Schottler*, 110 U. S. 354. In that case the court, speaking of the nature of the power conferred upon the supervisors of San Francisco to fix water rates, says: "Like every other tribunal established by the legislature for such a purpose, their duties are judicial in their nature, and they are bound in morals and in law to exercise an honest judgment as to all matters submitted to their official determination." And the same declaration was made by this court in *Spring Valley Water Works* v. *San Francisco*, 82 Cal. 286, 16 Am. St. Rep. 116; although it was held in that case that according to the averments of the complaint the supervisors had not exercised their judgment.

When we look at the language of said section 1 of article XIV, we see not only that it fails to require the construction put upon it by respondent, but that it clearly avoids the consequences above stated. So far we have assumed that the constitutional provision in question is really susceptible of two different constructions—one as presented by respondent, and the other as contended for by appellants; but it is readily perceived that the former is strained, difficult, and forced, while the latter is apparent and obvious, and rests naturally and easily upon the surface of the language employed. The first and leading words in that part of the section which designates the depository of the power are "the board of supervisors"; the balance of that part of the section merely makes exceptions of those municipalities of which boards of supervisors form no part. At the

time the section was adopted there was no city and county or city or town other than the city and county of San Francisco, of which a board of supervisors was the legislative department; and it may well be presumed that the constitutional convention, at that time, had particularly in view the city and county of San Francisco when they expressly granted to the board of supervisors the power to establish water rates. But as there were some, and might in the future be other, cities and towns of whose government boards of supervisors did and might not constitute a part, and as other consolidated city and county governments could be established in the future whose legislative department might or might not be boards of supervisors, it was necessary, also, to provide for the fixing of water rates in those kinds of municipalities. And so the section, after declaring that water rates "shall be fixed annually by the board of supervisors" (that is, of course, when such board was or should be a part of the government), proceeded to provide, also, that in municipalities having no boards of supervisors, the "other governing body" thereof should fix the rates. It is difficult to conceive how any other construction can be put upon the section without entirely eliminating therefrom the prominent and conspicuous words "board of supervisors."

We do not deem it necessary to discuss the question whether, if we were to look to the Consolidation Act alone, the Order No. 2622 would require the approval of the mayor, although it is difficult to see that it would be embraced within any of the enumerated cases in which he is given the veto power by that act; and the veto power is not to be favored by any strained construction; it is to be recognized only where clearly granted. But the power in question here comes, not from the Consolidation Act, but from the constitution of the state. It could have been granted in that instrument to the mayor, or to the supervisors, or to any body of municipal officers, or to the judges of the courts. It was, however, expressly granted to the board of supervisors; and

in the grant no mention is made of the mayor. Moreover, the "board or body" against whom a mandate will lie is the board or body to whom the power is given; and if the mayor is part of that "board or body," *he* is subject to *mandamus,* which would be absurd.

Of course, when a grant of power is made to several persons, or to a board consisting of several persons, the power is to be exercised by a majority of those persons, unless the power is otherwise limited by the grant itself. This is not only a necessary rule, and established by the general authorities, but it is expressly declared in section 12 of the Civil Code, which provides that " Words giving a joint authority to three or more public officers, or other persons, are construed as giving such authority to a majority of them, unless it is otherwise expressed in the act giving the authority."

Our conclusion is that the power to fix water rates in the city and county of San Francisco is granted by the constitution of the state solely to the board of supervisors of said city and county; that the matter of fixing such rates requires the exercise of discretion and judgment; that the board, having exercised its discretion by passing said Order No. 2622, cannot be compelled by *mandamus* to change its judgment or to take further action thereon; that said order is valid, notwithstanding the attempted veto of the mayor, and legally fixes the rates to be charged for water of said city and county during the year commencing July 1, 1893; and that the judgment of the superior court, commanding said appellants to take further action in the premises is erroneous.

The judgment appealed from is reversed, with directions to the superior court to dismiss the proceedings.

GAROUTTE, J., concurred.

HARRISON, J., concurring.— Whether the power to fix water rates in the city and county of San Francisco is vested in the board of supervisors alone, or whether the mayor is a constituent part of the governing body of that

city and county, and thereby vested with the function of assisting in fixing those rates, is to be determined solely by the construction of the language in which the authority is conferred. The same section of the constitution declares that if any board or body fails to pass the necessary ordinances or resolutions fixing these rates, as therein directed, they shall be subject to peremptory process to compel their action. This is a mandatory provision, and if the occasion shall ever be presented the issuance of such process ought not to be withheld upon the theory that it cannot be enforced. We ought not to assume that any political body will refuse to comply with the law after it has been declared by the highest tribunal in the state, or that there will be any occasion for a court to invoke any force other than the moral strength which its own declarations of the law ought to impress upon every citizen.

Article XIV, section 1, of the constitution, declares that the rates for the use of water supplied to any city and county shall be fixed annually " by the board of supervisors, . . . . or other governing body of such city and county, by ordinance or otherwise, in the manner that other ordinances or legislative acts or resolutions are passed by such body." If the determination of the question above stated is limited to the provisions of the constitution alone, it is clear that this duty is imposed upon the board of supervisors alone. The phrase " or other governing body," inserted in the section after the " board of supervisors" already designated, does not limit or qualify the functions of that board, but is evidently inserted for the purpose of supplying any omission in the previous enumeration of the titles by which the governing bodies of the several towns or cities may be known, and applies to those municipalities whose governing bodies are otherwise entitled, as, for example, the board of trustees in the city of Sacramento.

The respondent contends in substance that the term " governing body" is a *nomen generalissimum*, of which

"board of supervisors" is only an enumerated species, and that for the purpose of determining what is the governing body of any municipality it is necessary to resort to the organic act under which the several cities are organized; that by the provisions of the Consolidation Act of the city and county of San Francisco the mayor is a constituent part of the governing body of that municipality, and, consequently, in fixing the water rates for that municipality he is to be consulted.

We are not called upon here to determine how the water rates in San Francisco should be fixed, in case the governing body of the city and county of San Francisco should be changed, as that city is still governed by the same charter as existed at the adoption of the constitution. The contention of the respondent that the mayor is a part of the governing body of San Francisco rests upon the provisions of section 68 of the Consolidation Act, which declares that certain ordinances shall be presented to him for *approval* "before they take effect." This "approval" of the mayor is, however, an act distinct from the passage of the ordinance, and it is not called into exercise until after it has been passed by the board of supervisors. The mayor has no vote upon its passage, and the language of the section requiring it to be presented to him for his approval is that the ordinance, "after the same shall pass the board, shall, before it takes effect, be presented to the president of the board (mayor) for his approval." The Act of 1868 (p. 702) does not extend the power of the mayor in the passage of any ordinance or resolution by the board of supervisors, but merely provides that in those cases in which he is authorized to exercise a disapproval of their acts, nine votes shall be necessary to override his action. The same act provides that any ordinance, order or resolution may be passed by the vote of seven members of the board, and, consequently, every ordinance which is adopted by seven members is valid immediately upon its passage, unless by virtue of

section 68 it requires his approval.    (See *Chumasero* v. *Potts*, 2 Mont., 285.)

The mayor is not a member of the board of supervisors, nor is he necessarily a constituent part of the legislative power of the municipality.    His functions are of an executive or administrative character, and in article XI of the constitution he is in several places styled the "chief executive officer" of a city.    Whatever power he may at any time exercise in the legislative functions of a municipal government is never to be implied, but must find its authority in some positive statute, and, as the constitution confers upon the board of supervisors the power to fix the water rates by an ordinance, and neither makes any limitation upon their absolute authority in the matter, nor refers to any approval of their act by the mayor, we are not justified in holding that his approval is necessary.

It is further contended by the respondent that, inasmuch as the constitution requires the ordinance fixing the water rates to be passed by the board of supervisors "in the *manner* that other ordinances or legislative acts or resolutions are passed by such body," and, as by the provisions of section 68 of the Consolidation Act the mayor's approval is necessary to the validity of certain ordinances of which it is claimed this is one, such approval is a part of the "manner" in which the ordinance must be passed.    The reference therein to the "manner" in which legislative acts are passed may vary according to the provisions of the statute under which the municipal body is organized.    There may be no power to pass any legislative act until after it has been offered at a previous meeting of the board, or until after it has been published for a certain number of days, or the charter may require that the vote upon its passage shall be by having the ayes and noes entered upon its records, or by having the original ordinance signed by the members of the body voting therefor.    As a creature of the legislature, the mode in which

the municipal body is authorized to act becomes the only mode in which its acts can have validity, and this provision of the constitution only means that the ordinance or resolution by which the water rates shall be passed shall be in that manner which will constitute it a valid ordinance or resolution. This, however, does not include any steps other than those which are necessary for the passage of the ordinance, nor does it include any act of any other character than its passage. It is sometimes provided that an ordinance shall not have effect until it has been entered at length in a book kept for that purpose, or until it shall have been published in some newspaper for a certain length of time. These are steps necessary to give validity to the ordinance for its enforcement, but are entirely disconnected with its passage. The ordinance provided in this section of the constitution becomes valid immediately upon its passage.

Even under the provisions of section 68 of the Consolidation Act, the approval of the mayor does not become essential to the validity of an ordinance fixing water rates. His approval is required to only certain classes of ordinances which are enumerated in that section. These are ordinances " providing for any specific improvement, the granting of any privilege, or involving the lease or other appropriation of public property, or the expenditure of public moneys (except for sums less than five hundred dollars), or laying tax or assessment, or imposing a new duty or penalty." It is sufficient to say without further discussion that an ordinance fixing water rates is not included in either of these classes. The direct object and purpose of the ordinance does not involve the expenditure of any public moneys, but is to perform a public duty imposed by the sovereign people upon a designated tribunal of determining the compensation which the water company shall receive in the exercise of its franchise. Although this ordinance is the act of a legislative body, and is to that extent a legisla-

tive act, as has been sometimes stated, yet the act itself is more of a judicial than a legislative character, and was so determined by the supreme court of the United States in *Spring Valley Water Works* v. *Shottler*, 110 U. S. 347. In that case it was said with reference to this provision: "By the constitution, and the legislation under it, the municipal authorities have been created a special tribunal to determine what, as between the public and the company, shall be deemed a reasonable price during a certain limited period. Like every other tribunal established by the legislature for such a purpose their duties are judicial in their nature, and they are bound in morals and in law to exercise an honest judgment as to all matters submitted for their official determination." (See, also, *Spring Valley Water Works* v. *San Francisco*, 82 Cal. 307; 16 Am. St. Rep. 116.) The constitution substituted the board of supervisors for the board of commissioners which was authorized by the Act of 1858, and it is reasonable to hold that the functions of the two boards are the same.

The proposition that the power to fix the water rates rests with the supervisors alone is not now presented for the first time. In *Spring Valley Water Works* v. *San Francisco*, 61 Cal. 18, Chief Justice Morrison said that this provision for fixing the water rates "is as broad and comprehensive as the English language could make it, and gives to the board of supervisors of the city plenary power over the subject matter to which the article relates," and in another case between the same parties, reported in the same volume (61 Cal. 3), Justice McKee, in giving the opinion of the court, said: "Water rates must be fixed by the board of supervisors, pursuant to the provisions of the Act of 1881, and not by a board of commissioners appointed under the Act of 1858." In another case between the same parties (82 Cal. 305; 16 Am. St. Rep. 116), this court said: "It must be conceded in the outset that the use of water for sale is a public use, and that the price at which it shall be sold is a

matter within the power of the board of supervisors to determine." The Act of 1881 (page 54), above referred to, is a legislative provision for carrying into effect this provision of the constitution, and the first section declares: "The board of supervisors, town council, board of aldermen, or other legislative body of any city and county, city or town, are hereby authorized and empowered, and it is made their official duty, to annually fix the rates that shall be charged and collected by any person, company, association or corporation for water furnished to any such city and county, or city or town, or the inhabitants thereof. Such rates shall be fixed at a regular or special session of such board, or other legislative body, held during the month of February of each year, and shall take effect on the first day of July thereafter, and shall continue in full force and effect for the term of one year, and no longer." In this statute the board of supervisors alone is designated as the body whose official duty it is to fix the rates, and there is no reference to any approval of their act by the mayor, or any limitation upon the manner in which they shall act, and, for the purpose of determining whether their act is valid, we have only to look to their organization and invoke the general rules of construction for determining how an organized board may execute a power conferred upon it.

For the foregoing reasons, as well as those presented by Mr. Justice McFarland, the judgment should be reversed and the court below directed to dismiss the proceedings.

DE HAVEN, J., and FITZGERALD, J., concurred.

PATERSON, J., concurring.—I concur in the judgment and in the construction placed upon section 1, article XIV, of the constitution, by Mr. Justice McFarland. I think, however, that the judgment is not objectionable, on the ground that it seeks to interfere with the exercise of the discretion of the board, or any member

thereof, or that, conceding the theory of the petitioner to be correct, the writ must run against the mayor as well as the board.

The record shows that after the mayor refused to approve the ordinance and return the same with his objections thereto, the board of supervisors refused to entertain the objection, and refused to take any action whatever with respect thereto.   If the mayor had a right to act in the premises, it was the duty of the board of supervisors to consider his objections, and it is in no way an interference with their *discretion* to say that they must act in some manner upon them.   When they *have acted*, of course that is the end of the matter; their discretion cannot be controlled by the court.

If it be conceded that the mayor is a part of the power which must fix the water rates, he is not necessarily a party to a proceeding of this kind.   He acts independently and upon his own responsibility.   This he has done.   The board alone refuses to perform its duty, according to the theory of the petitioner, and I see no reason why a writ, in such a case, should not run against that branch of the law or order making power.

As the mayor, however, is not a part of the power which fixes water rates, under the provision of the constitution, the questions as to whether the judgment is directed against the proper parties, or whether it interferes with the exercise of discretion, are unnecessary to the decision in this case.

BEATTY, C. J., concurring.—I concur in the judgment, upon the ground that the true construction of the constitution is that ordinances fixing water rates are to be passed as legislative acts of the particular municipality are *generally* passed, and not as they are passed in exceptional cases provided by act of the legislature.

To hold otherwise would be to admit the power of the legislature and boards of freeholders to adopt charters under which, with respect to all other subjects of legislation, a reasonable discretion and freedom of action

would be left to the legislative body; while with respect
to water ordinances the legislative body would be so
hampered and restricted that the fixing of rates would
be practically impossible, thus accomplishing the con-
fiscation of the property of water companies.

The board of supervisors of San Francisco is the leg-
islative body as to all subjects of legislation with a few
special exceptions, and its acts do not *generally* require
the approval of the mayor.

Water ordinances must be held to fall under the gen-
eral rule, and not within the exception.