[No. 15581.   Department Two.—December 13, 1894.]

## JOHN W. EISENHUTH ET AL., APPELLANTS, *v.* W. W. ACKERSON, SUPERINTENDENT OF STREETS, ETC., RESPONDENT.

STREET RAILROAD—GRANTING OF FRANCHISE—MUNICIPAL ORDINANCE OF SAN FRANCISCO—VETO OF MAYOR.—An ordinance granting a right to construct and operate a street railroad in the streets of San Francisco is an ordinance granting a privilege, within the meaning of section 68 of the Consolidation Act, and is subject to the mayor's veto.

ID.—CONSTRUCTION OF CODE—MODE OF GRANTING PRIVILEGE FOR STREET RAILROAD—GENERAL LAW—REPEAL.—Section 497 of the Civil Code, providing that authority to lay railroad tracks through the streets and public highways of any incorporated city or town may be obtained for a term of years, not exceeding fifty, from the body to whom is intrusted the government of the city or town, is not inconsistent with, and does not repeal, any part of section 68 of the Consolidation Act of San Francisco, which provides the mode or manner of the grant; since that section of the code does not require all municipalities to grant the privilege in a uniform mode, and does not prescribe the manner in which the grant shall be made; although, to the full extent of authorizing these governing bodies to grant street railroad franchises, section 497 of the Civil Code is a general law, and by implication repeals all prior laws inconsistent therewith.

ID.—POWERS OF RAILROAD CORPORATIONS—TWO-THIRDS VOTE OF SUPERVISORS—VETO POWER OF MAYOR.—Section 470 of the Civil Code, referring to the powers of railroad corporations generally, and providing that no railroad corporation must use any street, alley, or highway within an incorporated city or town unless the right to use the same is granted by a two-thirds vote of the town or city authority, does not prescribe or regulate the manner in which municipal corporations shall legislate on that subject, and detracts nothing from the veto power of the mayor of the city and county of San Francisco, which power does not depend upon the number of votes by which an ordinance or resolution passes the board of supervisors.

APPEAL from an order of the Superior Court of the City and County of San Francisco discharging an order to show cause why an injunction should not issue, and from an order dissolving a temporary restraining order.

The facts are stated in the opinion of the court.

*H. S. Foote, John H. Durst,* and *Louis F. Dunand,* for Appellants.

*City and County Attorney Harry T. Creswell*, for Respondent.

The Court.—On December 19, 1892, the board of supervisors, by a vote of ten ayes to one nay, passed an ordinance purporting to grant to plaintiffs and their successors and assigns the privilege to construct and operate a street railroad in the city of San Francisco, extending over portions of some eighteen different streets of said city, for the term of fifty years.

In due time, after this ordinance so passed the board of supervisors, it was presented to the president of said board (the mayor) for his approval, who within ten days thereafter returned it to the board without having signed it, and with his written objections thereto, which objections were duly entered upon the journal of the board, and published as required by section 68 of the Consolidation Act. Thereafter, at a stated meeting of the board, one of the members thereof offered a resolution to pass said ordinance, notwithstanding the said objections of the mayor; which resolution was negatived and lost by a unanimous vote of the twelve members of the board, whereby the said written objections of the mayor were sustained, and no further action has been taken upon said ordinance or objections. All the proceedings of the board and of the mayor in regard to the said ordinance were in strict compliance with the Consolidation Act, and were completed on the sixth day of February, 1893.

On April 27, 1893, the plaintiffs commenced the construction of a double track electric railway upon and along the route and streets designated in said ordinance, and had constructed about two hundred feet of track on Broderick street when the defendant, in his official capacity as superintendent of streets of said city and county, stopped further progress in the construction of said railway, and ever since has prevented plaintiffs and their employees from continuing the construction thereof, and ordered plaintiffs to remove the

track already laid, and threatened that unless they did so within three days he would tear up and remove the same; and further threatens to prevent the construction by plaintiffs of the railway, or any part thereof, on the route designated in said ordinance.

The object of this action is to enjoin the defendant perpetually from obstructing or interfering with the construction or operation of said railway in accordance with said ordinance, and so to restrain him pending the action.

Upon the filing of the complaint the court ordered defendant to show cause why he should not be so enjoined, and at the same time issued a restraining order to operate in the mean time and until further order.

The matter upon the order to show cause was submitted to the court upon the complaint and an agreed statement of facts, including the facts above stated; whereupon the court discharged the order to show cause, and dissolved the temporary restraining order. From these orders the plaintiffs appealed.

As already remarked, the proceedings by which the board of supervisors attempted to grant the privilege or franchise in question were had under and in strict accordance with section 68 of the Consolidation Act. So much of the sixty-eighth section as pertains to the grant in question is as follows:

"Every ordinance or resolution of the board of supervisors providing for any specific improvement, the granting of any privilege, or involving the lease or other appropriation of public property, or the expenditure of public moneys (except for sums less than five hundred dollars), or laying tax or assessment, and every ordinance or resolution imposing a new duty or penalty, shall, after its introduction in the board, be published, with the ayes and nays, in some city daily newspaper at least five successive days before final action by the board upon the same, and every such ordinance, after the same has passed the board, shall, before it takes

effect, be presented to the president of the board for his approval. If he approves, he shall sign it; if not, he shall return it within ten days to the board, with his objections in writing. The board shall then enter the objections on the journals, and publish them in some city newspaper. If at any stated meeting thereafter two-thirds of all the members elected to the board vote for such ordinance or ·resolution it shall then, despite the objections of the president, become valid. Should any such ordinance or resolution not be returned by the president within ten days after he receives it, it shall become valid, the same as if it had received his signature." (Worley's Consolidation Act, 16.)

Unless that part of this section relating to the granting of privileges was repealed before the ordinance in question was vetoed by the mayor there can be no plausible pretense that the ordinance ever took effect, or that the superior court erred in dissolving the restraining order, or in discharging the rule to show cause. Therefore, the principal and controlling question for decision, to which all others discussed by counsel are either subject or merely subsidiary, is whether or not that part of the above extract from the sixty-eighth section of the Consolidation Act requiring the mayor's approval of all resolutions and ordinances granting a privilege had been repealed before February 6, 1893, when the board of supervisors unanimously sustained the mayor's veto of the ordinance in question, since it must be admitted, and is admitted by appellants, that an ordinance granting a right to construct and operate a street railroad on the streets of San Francisco is an "ordinance granting a privilege," in the sense of section 68 of the Consolidation Act.

The case of *McDonald* v. *Dodge*, 97 Cal. 112, cited by appellants, can have no proper application to this case. That case decides, by implication at least, that the street law of 1883 (Vrooman act), as amended March 4, 1889, is inconsistent with, and therefore repealed, that part of section 68 of the Consolidation Act which re-

quires the mayor's approval of "every ordinance or resolution of the board of supervisors providing for any specific improvement." But that decision does not touch nor in any way affect the provision of the Consolidation Act requiring the mayor's approval of all ordinances and resolutions granting any privilege.

Nor does the decision or the opinion of any of the justices in the case of *Jacobs* v. *Board of Supervisors*, 100 Cal. 121, apply to this case, except the concession therein made that the veto power of the mayor is to be recognized in all cases where it is clearly granted. The question in that case was whether or not the mayor was authorized to veto an ordinance of the board of supervisors, fixing rates to be paid for water in the city and county of San Francisco; and upon a construction of the Consolidation Act, in connection with section 1 of article XIV· of the state constitution, it was decided that the approval of the mayor was not necessary to the validity of such an ordinance, inasmuch as the board of supervisors of the city and county of San Francisco was the legislative and governing body of the municipality, except for a few specified purposes, of which the fixing of water rates was not one.

Speaking of·the Consolidation Act, Mr. Justice McFarland, who wrote the leading opinion, said: "Under that act the board of supervisors· is the legislative department of the municipal government, although it is provided therein that the ordinances upon certain enumerated subjects shall not be effective unless approved by the mayor (whose office is created by said act), or unless, after his veto, nine members of the board shall vote therefor. Under the act, however, there are many things which the board may do without the concurrence of the mayor. . . . . We do not deem it necessary to discuss the question whether, if we were to look to the Consolidation Act alone, the order No. 2622 (fixing water rates) would require the approval of the mayor, although it is difficult to see that it would be embraced

within any of the enumerated cases in which he is given the veto power by that act."

Mr. Justice Harrison, in his concurring opinion, after placing his concurrence on constitutional grounds, said: "Even under the provisions of section 68 of the Consolidation Act, the approval of the mayor does not become essential to the validity of an ordinance fixing water rates. His approval is required to only certain classes of ordinances which are enumerated in that section. . . . . It is sufficient to say, without further discussion, that an ordinance fixing water rates is not included in either of these classes."

The chief justice, Beatty, said: "I concur in the judgment, upon the ground that the true construction of the constitution is that ordinances fixing water rates are to be passed as legislative acts of the particular municipality are *generally* passed, and not as they are passed in exceptional cases provided by act of the legislature."

These extracts from the opinion of the justices show that the *Jacobs* case has no bearing upon the case at bar, except in so far as it may be said to concede the power of the mayor to veto ordinances of the classes specified in section 68 of the Consolidation Act.

The principal point made by counsel for appellant, however, is founded upon section 497 of the Civil Code, under which they say the grant of the franchise in question was made, and which they claim to be so inconsistent with the power of the mayor to veto such grant as to repeal, by implication, that part of section 68 of the Consolidation Act which authorizes him to veto all ordinances and resolutions of the board providing " for the granting of any privilege."

Section 497 of the Civil Code is the first section of *title IV, part IV, division 1*, headed, " *Street Railroad Corporations*," and reads as follows: "Authority to lay railroad tracks through the streets and public highways of any incorporated city or town may be obtained for a term of years, not exceeding fifty, from the trustees, council, or other body to whom is intrusted the govern-

ment of the city or town, under such restrictions and limitations, and upon such terms and payment of license tax, as the city or town authority may provide. In no case must permission be granted to propel cars upon such tracks otherwise than by horses, mules, or by wire ropes running under the streets and moved by stationary steam-engines, unless for special reasons, as hereinafter provided."

But we perceive nothing in this section or in title IV at all inconsistent with any part of section 68 of the Consolidation Act, since neither section 497 nor any other part of title IV purports to provide or regulate the mode or manner in which the "authority" to lay street railroad tracks in the streets of incorporated cities or towns shall or may be granted by the "trustees, council, or other body to whom is intrusted the government of the city or town." The sole object of title IV was to authorize the governing bodies of incorporated cities and towns to grant the privilege of laying street railroads under such restrictions and limitations as are specified in that title. There was no necessity for providing the mode or manner of the grant, so long as the legislature was content with the modes already provided by the charters of the different cities and towns in the state, although the governing bodies of such cities and towns were differently constituted and governed by charters prescribing different modes of municipal legislation. Any authorized mode of granting the privilege of constructing and operating street railroads, fully answered all purposes of the code provisions cited, without requiring all municipalities to grant that privilege in a uniform mode. If, as contended by counsel, section 497 of the Civil Code cannot operate uniformly on all municipal corporations without uniformity in the manner of passing ordinances granting the particular privilege for which it provides, then, indeed, is that section itself unconstitutional, since it fails to provide for such uniformity of manner and leaves it to be governed by the charters of the different municipalities, whose

modes of legislation are far from uniform in this respect. But we think that section is not wanting in uniformity of operation on the governing bodies of all incorporated cities and towns in the state; which governing bodies, however constituted, it authorizes to grant the privilege of constructing street railroads, without prescribing the manner in which the grant shall be made; and it does not purport to have any other operation or effect. For the purposes, and to the full extent of thus authorizing such governing bodies to grant street railroad franchises, section 497 of the Civil Code is a general law, and, by implication, repeals all prior laws inconsistent therewith; but, as above remarked, section 68 of the Consolidation Act is in no respect inconsistent therewith.

It is finally contended by appellants that even if title IV of the Civil Code does not prescribe the manner of granting street railroad franchises, section 470, under title III of that code, does prescribe a mode inconsistent with that prescribed by section 68 of the Consolidation Act.

Title III is headed "Railroad Corporations," and is divided into three chapters, entitled as follows: "I. Officers and Corporate Stock. II. Enumeration of Powers. III. Business, How Conducted."

Section 470 of title III is as follows: "SEC. 470. No railroad corporation must use any street, alley, or highway, or any of the land or water, within any incorporated city or town, unless the right to so use the same is granted by a two-thirds vote of the town or city authority from which the right must emanate."

This section is, in chapter II, devoted to the enumeration of the powers of *railroad corporations* generally; whereas title IV, in which is found section 497, is devoted exclusively to street railroads; nor does title III purport to enumerate, define, restrict, or enlarge the powers of municipal corporations, or to prescribe or regulate the manner in which municipal corporations shall legislate or otherwise govern. Surely section 470 detracts nothing from the yeto power of the mayor of the city and county

of San Francisco, which power does not depend upon the number of votes by which an ordinance or resolution passes the board of supervisors; for he may veto and thereby compel a reconsideration of an ordinance passed by unanimous vote of all the members of the board.

And it may not be impertinent, under this head, further to observe that the grant of the franchise in question in this case was not to a corporation of any kind, but to natural persons; and that it does not appear that any railroad corporation has any interest in the grant.

We perceive no error in the action of the lower court, and therefore affirm the orders appealed from.

Hearing in Bank denied.