[S. F. No. 4090. In Bank.—October 27, 1904.]

## JOSEPH N. HARRISON, Petitioner, v. ROBERT W. ROBERTS et al., Respondents.

FREEHOLDERS' CHARTERS—TIME FOR SUBMITTING AMENDMENTS—CONSTRUCTION OF CONSTITUTION—MANDAMUS.—Section 8 of article XI of the constitution, providing that a ratified freeholders' charter "may be amended at intervals of not less than two years by proposals therefor, submitted by the legislative authority of a city to the qualified electors thereof at a general or special election," etc., has sole reference to the intervals between elections upon proposed amendments; and the submission of a proposed amendment at a general election to be held within less than two years after a prior special election, at which amendments to the charter were sub-

mitted and approved, is invalid, and cannot be enforced by writ of mandate.

Id.—" LEGISLATIVE AUTHORITY OF CITY "—MAYOR NOT INCLUDED.—The mayor is not included in the "legislative authority of a city," within the meaning of section 8 of article XI of the constitution; and a proposed amendment to the freeholders' charter of the city and county of San Francisco, proposed by the board of supervisors, which constitutes the "legislative authority" thereof, need not be presented to the mayor for his approval.

PETITION for Writ of Mandate to Board of Election Commissioners and Registrar of Voters of the City and County of San Francisco.

The facts are stated in the opinion of the court.

Lane, Ledeman & Lane, and Cameron H. King, for Petitioner.

Percy V. Long, James A. Devoto, Devoto & Richardson, and John S. Partridge, for Respondents.

ANGELLOTTI, J.—An application was made to this court for a writ of mandate, requiring defendants, who are the board of election commissioners and the registrar of voters of the city and county of San Francisco, to prepare and cause to be printed upon the ballots to be used at the general election to be held on November 8, 1904, a column with voting squares, whereby the electors may indicate their votes upon certain proposals to amend the charter of said city and county, which, it is claimed, should be voted on at such election.

As it was necessary to immediately act upon the application, the matter was decided by this court on October 21, 1904, without the filing of any written opinion. By that decision, the application for a writ of mandate was denied. This opinion is now filed, to indicate the views of the court upon the questions presented by the application.

The main question presented by the application is as to the proper construction of the provisions of the constitution relative to the time when proposed amendments of a municipal freeholders' charter may be ratified by the electors of the municipality.

The provision of the constitution under which a freeholders'

charter may be amended is as follows: ''The charter, so rati-
fied, may be amended at intervals of not less than two years
by proposals therefor, submitted by the legislative authority
of the city to the qualified electors thereof, at a general or
special election, held at least forty days after the publication
of such proposals for twenty days in a daily newspaper of
general circulation in such city, and ratified by a majority of
the electors voting thereon, and approved by the legislature,
as herein provided for the approval of the charter.'' (Const.,
art. XI, sec. 8.)

It will thus be seen that it is essential to any amendment
that a proposal therefor be submitted to the qualified electors
of the municipality at a general or special election, and that
such proposal be ''ratified'' by a majority of the electors vot-
ing thereon. This proposal must emanate from the ''legisla-
tive authority'' of the municipality, and, by reason of another
provision of the constitution, such legislative authority *must*
submit to the electors any proposed amendments petitioned
for by fifteen per cent ''of the qualified voters of the city.''
Amendments ''ratified'' by the electors, like the original
charter, may be ''approved'' or rejected as a whole by the
legislature of the state, which body, however, has no power
of alteration or amendment thereof. Such approval may be
made by concurrent resolution, and the amendments take
effect only upon such approval being given. The constitution
explicitly provides, as appears from the portion hereinbefore
quoted, that the charter may be ''amended'' only at intervals
of not less than two years.

It appears that on December 4, 1902, a special election was
held in the city and county of San Francisco, at which election
there was submitted to the electors thereof for ratification
certain proposed amendments to the charter. These amend-
ments had been proposed by the legislative authority by reso-
lutions adopted at different dates between July 12 and Au-
gust 10, 1902. At this election certain of the amendments so
proposed were ratified by the necessary majority of the
electors, and said amendments were on February 5, 1903, ap-
proved by the legislature, by concurrent resolution. (Stats.
1903, p. 583.)

It thus appears that two years will not have expired on
November 8, 1904, since certain proposed charter amendments,

subsequently approved by the legislature, were ratified by the electors of the city and county of San Francisco.

If the constitutional provision quoted above, in so far as it declares that the charter "may be amended" only "at intervals of not less than two years," has reference solely to the time of the general or special election at which a proposed amendment is submitted for ratification, it must be admitted that any ratification by the electors of the amendments here proposed, had within two years of December 4, 1902, would be in violation of such constitutional provision, and therefore invalid.

That such is the proper construction of that provision, we. entertain no doubt. The correctness thereof is more clearly perceived on a consideration of the only other constructions possible. If the provision does not have reference solely to the date of election by the people, it must mean either that none of the steps essential to the taking effect of an amendment—viz., proposal, ratification by the people, and approval by the legislature—can be taken within two years after the approval of the legislature of a prior amendment, or simply that no charter amendment must be approved by the legislature within two years after a prior approval by the legislature of an amendment of the same charter.

It will be observed that the first of these constructions could not assist plaintiff in this proceeding, it being sought by him to have the proposals for certain amendments submitted to the electors within less than two years from the approval by the legislature of prior amendments, but we deem it proper to indicate our views thereon, as the question is one of importance to all municipal corporations existing under freeholders' charters.

The effect of this construction would be, that while the constitution in terms declares that "the charter . . . may be amended" at intervals of two years, amendments could in fact, in the absence of a special session of the legislature, be fully accomplished and put into effect only at intervals of nearly four years. Two years would be required to elapse after the approval of the amendment by the legislature before another proposal could be made by the legislative authority of a municipality, which, with the time required for notice of the election, would carry the matter beyond reach of the legis-

lature at the succeeding regular session and defer proceedings for practically another two years. It seems very clear that it was the intention that whatever is here authorized by the constitutional provision might be fully accomplished at intervals of two years.

The second construction suggested—viz., that the provision simply means that no charter amendment may be "approved by the legislature" within two years after a prior approval by the legislature of an amendment of the same charter—is the only one that could avail plaintiff in this proceeding. This construction would make the provision as to time referable solely to the approval by the state of an amendment theretofore ratified by the people of a municipality, and render it a prohibition on the legislature of the state, rather than a prohibition on the municipality.

Although the electors of the city had "ratified" the amendment, and the municipality had completed every act within its power to perform in a matter relating solely to its municipal affairs, the approval of the state could not be given until the lapse of precisely two years from a prior approval by the state of any amendment to the same charter.

The effect of this construction would be that proposed amendments might be submitted to the people of the municipality for ratification as often as the legislative authority of the city, or fifteen per cent of the electors thereof, expressed, in proper form, their desire for such submission. Special elections on amendments, with all the attendant disturbances and cost, could be as frequent as a few officers or a small minority of the electors might determine, and the prohibition as to time, undoubtedly inserted for some good purpose, would simply defer the ordinarily formal action by the state legislature, and the consequent taking effect of an amendment.

It is impossible to conceive of any good object to be attained by thus expressly deferring for a specified time simply the action of the legislature upon an amendment which has been ratified by the people of a municipality.

Such a provision would not in any substantial degree tend to permanency of charter provisions. Under our system of biennial sessions of the legislature, the approval of amendments can in the nature of things be had only at intervals of

approximately two years, in the absence of the very exceptional case of a special session, and therefore no provision as to the time of approval was necessary to insure practically all that could have been contemplated in the way of permanency by the provision under consideration.

A mere delay for a few days by the legislature in the matter of the approval of amendments ratified by the electors could not have been the object sought to be attained.

The real essential to an amendment is, after all, the ratification by the people at an election. The submission of the proposal to amend is of course essential as a preliminary, for in no other way could an opportunity for the electors to formally express their desires be had, but, as already noted, a small minority of the electors may compel such submission. The approval by the legislature subsequent to the ratification has also been made essential to the taking effect of the amendment, but under our well-settled policy of municipal self-government in municipal affairs this approval is practically only a formal matter, where the subject-matter of the amendment is within the proper scope of the municipal charter. No instance of the rejection by the legislature of a proposed municipal charter or any amendment thereto has yet been recorded, so far as we have been able to find. When amendments to a charter have once been ratified by the necessary number of electors, it is practically settled that they will in due course be approved and take effect. The legislature, it is true, has the power to reject them, but it could never have been contemplated that this power would be exercised, except so far as might be necessary in the protection of the interests of the state and the citizens of the state, as contradistinguished from the interests of the municipalities. Practically, it is the ratification of the proposal for amendment by the electors of the municipality that determines the change in charter provisions, and any provision of law designed to obtain more or less permanency in the terms of the charter, to be effectual, would naturally be addressed to the time of such ratification,— i. e. to the general or special election at which the amendment is voted upon. That this was one of the objects of the provision under discussion is very clear. This court has already said thereof in *Blanchard* v. *Hartwell,* 131 Cal. 263, 265: "Here is a clear and positive constitutional policy calculated

to insure some degree of permanency, and to prevent frequent changes.''

Another apparent object of the limitation as to time was to protect the municipality against the expense and disturbance of frequent elections. Economy and a certain degree of permancy in charter provisions are the only objects of such a limitation that can reasonably be suggested, and these objects can be substantially subserved by no other reasonable construction of the constitutional provision before us, than the one to the effect that the limitation as to time has reference solely to the general or special election at which proposed amendments are submitted for ratification by the electors of the municipality.

Our conclusion upon this question is, that the only effect of the limitation as to time is to prohibit a submission for ratification by the electors of any proposed amendment within two years from the submission for ratification of any prior amendment; in other words, that proposals for amendments may be submitted at elections only at intervals of two years.

It is suggested that the practical effect of this decision will be in this instance to put the city and county of San Francisco to the expense of a special election on the proposed amendments, if such amendments are to be acted upon at the next session of the legislature. This is of course true, but we are unable to see how it affects the question as to the proper construction of the constitutional provision. The practical effect of our construction of the constitutional provision will also be, that a municipality can be put to such expense only once in every two years, while the construction contended for would give the municipality as many special elections on such questions as the legislative authority of the city or fifteen per cent of the electors thereof desired.

It was contended by respondents that said proposals were not legally adopted by the board of supervisors, in that the resolutions therefor were not signed by the mayor of the city or presented to him for his signature or approval. The constitution declares that the proposals are to be submitted by the ''legislative authority of the city.''

The charter of San Francisco declares (art. II, chap. I, sec. 1; Stats. 1899, p. 244): ''The legislative power of the city and county of San Francisco shall be vested in a leg-

islative body, which shall be designated the board of supervisors." And section 1 of chapter I of article IV declares that the mayor is the chief executive officer of the city and county.

The "legislative authority" of the city and county is therefore vested in the board of supervisors. The requirement in section 16 of chapter I of article II, that certain bills and resolutions which shall have been passed by the board of supervisors shall be presented to the mayor for his approval, gives him a qualified veto upon the action of the board, but does not make him a constituent part of the legislative authority of the city and county. The provision in this section is moreover limited to the bills and resolutions "hereinbefore provided," and does not include proposals for amendments to the charter. The provision in section 5 of chapter I of article II, that he shall be presiding officer of the board of supervisors, confers upon him no more legislative authority than is given to the lieutenant-governor by being president of the senate.

Under the provisions of section 34 of the Street Improvement Act, that the term "city council" includes a body or board which under the law is the legislative department of the government of any city, it was held in *McDonald* v. *Dodge*, 97 Cal. 112, that the board of supervisors of San Francisco is the body which forms the legislative department of the government of the city, the court saying: "It is true that the mayor, by virtue of his right of veto in certain cases, has some of the lawmaking power of the municipality; but the charter of the city does not make him a part of the 'legislative department,' in the sense that no independent power is or can be given to the latter."

In *Jacobs* v. *Board of Supervisors*, 100 Cal. 121, it was held that the constitutional provision for the fixing of water rates by the board of supervisors or other governing body of the city and county did not require the ordinance fixing such rates to be presented to the mayor of San Francisco for his approval. (See, also, *Brooks* v. *Fischer*, 79 Cal. 173; *Truman* v. *Supervisors*, 110 Cal. 128.)

It must be held, therefore, that it was not necessary that the proposals for amendment should be concurred in by the mayor or presented to him for approval.

The application for the writ of mandate having been already denied, no further order is necessary. ·

McFarland, J., Van Dyke, J., and Henshaw, J., concurred.

Mr. Justice Shaw, who is now temporarily absent, concurred in the order heretofore made.

Petition for modification of judgment denied.