[Civ. No. 614.   Third Appellate District.—April 10, 1909.]

## JOSEPH A. MIGLIAVACCA, Petitioner, v. THE CITY OF NAPA, a Municipal Corporation, et al., Respondents.

MUNICIPAL CORPORATIONS—FREEHOLDERS' CHARTER—CONSTRUCTION OF CONSTITUTION — AMENDMENTS — REJECTION — SUBMISSION WITHIN TWO YEARS.—Section 8 of article XI of the constitution, relative to proposed amendments of a freeholders' charter of a municipal corporation, which provides that "the charter so ratified may be amended at intervals of not less than two years by proposals therefor, submitted by the legislative authority of the city to the qualified electors thereof, at a general or special election held" as therein provided, "and ratified by a majority of the electors voting thereon, and approved by the legislature as herein provided for the approval of the charter," is intended to prevent the actual amendment of the charter within two years after prior amendments have been adopted, and cannot be construed to prevent the submission of amendments within less than two years after amendments have been rejected by the voters.

ID.—REASON FOR CONSTITUTIONAL PROVISION.—The main reason for the constitutional provision that the amendments of a freeholders' charter shall be made only at intervals of two years is to insure some degree of permanency, and to prevent frequent changes.

ID.—CONSTITUTIONAL POLICY NOT CONTRAVENED BY PROPOSED AMENDMENTS AFTER DEFEAT.—If proposed amendments to a charter are defeated at an election by the electors, there can be no contravention of the constitutional policy as to permanence, and to prevent frequent changes, by submitting proposed amendments within two years from the date of the election, since the attempt to amend in the first instance was abortive, and the result is the same as if no effort had been made to amend.

ID.—WRIT OF PROHIBITION NOT ALLOWED.—It appearing that the municipal authorities are clearly acting within their constitutional rights in submitting proposed amendments to a freeholders' charter within less than two years after the defeat of prior proposed amendments, the writ of prohibition will not lie to prevent them from proceeding with the submission thereof.

APPLICATION for writ of prohibition to the municipal legislature of the City of Napa.

The facts are stated in the opinion of the court.

F. E. Johnston, for Petitioner.

Wallace T. Rutherford, for Respondents.

HART, J.—This is a direct application to this court for a writ of prohibition, the purpose of which is to restrain the respondents—the city of Napa and its mayor, city clerk and councilmen—from submitting to the voters of the said city of Napa certain proposed amendments to the charter, to be voted upon by said voters at the general municipal election to be held in said city on the third day of May, 1909.

The city of Napa, as a municipal corporation, is governed by a freeholders' charter, adopted in accordance with the requirements of section 8 of article XI of the constitution.

It appears from the averments of the petition that on the twentieth day of January, 1909, under an ordinance previously adopted by the city council for that purpose, a special election was held in said city at which were submitted certain proposed amendments to said charter. None of these proposed amendments received the required number of votes for their ratification, and were, therefore, rejected by the electors voting at said election.

On the 16th of February, 1909, "another petition, duly signed by more than fifteen per cent of the qualified voters of the said city of Napa, requesting the legislative authority thereof to submit certain proposed amendments to the charter of the said city to the qualified voters thereof for approval, was presented to and filed with the legislative authority of the said city," and in pursuance thereof the said legislative authority, on the first day of March, 1909, passed an ordinance, the same having been approved by the mayor on the same day, "for the purpose of submitting said last mentioned proposed amendments to the said charter to the qualified voters of said city of Napa for approval."

The respondents have interposed a general demurrer to the petition, and the single question thus submitted for consideration hinges upon the meaning of section 8 of article XI of the constitution.

So much of that section of the constitution as is pertinent to the inquiry here reads as follows: ". . . The charter so ratified may be amended at intervals of not less than two years by proposals therefor, submitted by the legislative authority of the city to the qualified electors thereof, at a general or special election, held at least forty days after the publication of such proposals for twenty days in a daily news-

paper of general circulation in such city, and ratified by a majority of the electors voting thereon, and approved by the legislature as herein provided for the approval of the charter.'' (Stats. 1905, p. 1064.)

It is the contention of the petitioner that the foregoing provision of the constitution means that the mere proposal of amendments of a freeholders' charter, without regard to whether they are ratified by the electors or not, exhausts the right of the legislative authority of a municipal corporation operating under such a charter to submit or propose other amendments to such charter within two years after the first proposal. In other words, it is the claim that it is immaterial whether proposed amendments are ratified or rejected by the electors to whom submitted, for the power cannot be exercised by the legislative body to propose either the same or other amendments within two years after amendments have already been proposed and voted upon.

In thus construing the said provision of the constitution and in support of his position, the petitioner cites the case of *Harrison* v. *Roberts,* 145 Cal. 173, [78 Pac. 537].

In that case a writ of mandate was asked to compel the board of election commissioners and the registrar of voters of the city and county of San Francisco to so arrange the ballots to be used at the general election held on the eighth day of November, 1904, as to enable the electors to indicate their votes upon certain amendments to the charter of said city and county, which had theretofore been proposed by an ordinance adopted for that purpose by the legislative authority of said city and county. It appeared from the petition for the writ of mandate that on December 4, 1902, a special election was held in the city and county of San Francisco, ''at which election there were submitted to the electors thereof for ratification certain proposed amendments to the charter,'' some of which amendments so proposed ''were ratified by the necessary majority of the electors,'' and thereafter, by concurrent resolution, approved by the legislature.

It will thus be seen that the date of the election at which it was sought to coerce the submission to the electors of the proposed amendments was a little less than two years from the election held in December, 1902, at which certain of the

amendments to the charter then proposed were ratified by the electors.

There were suggested in that case two different constructions of the constitutional provision in question, viz.: 1. That none of the steps necessary to the taking effect of an amendment to a charter—that is, the proposal, the ratification by the electors and the approval by the legislature—can be taken within two years after approval by the legislature of a prior amendment; 2. That no charter amendment must be approved by the legislature within two years after a prior approval by the legislature of an amendment of the same character.

Neither of these constructions was sustained by the supreme court; but it was held that the provision as to the limitation of time within which proposals for the amendment of the charter may be made means that such proposals may be made at any time after the expiration of two years from the date of the election at which the electors have voted upon any prior amendment or amendments. The point thus decided in the case under review was the only one essential to the decision. But counsel for the petitioner here particularly rely upon the following language contained in the opinion in that case: "Our conclusion upon this question is, that the only effect of the limitation is to prohibit a submission for ratification by the electors of any proposed amendment within two years from the submission for ratification of any prior amendment; in other words, that proposals for amendments may be submitted at elections only at intervals of two years."

This language would appear to sustain the position of the petitioner, and we would be compelled to so hold if it involved anything more than mere dictum; for it is clear that the language was not necessary to a decision of the only point in the case, viz., whether the time limit began with the election at which prior proposed amendments were voted upon or from the time of the approval of the ratified amendments by the legislature. But we do not think it was the intention of the court to hold that where proposed amendments to the charter were rejected at an election by the electors, the right to submit the same or other amendments at an election held within two years from the date of the prior election at which such proposed amendments were refused ratification is fore-

closed under the terms of the constitution. Among our reasons for this assertion is that the court in the case cited in effect declares, and obviously it is true, that the main reason for the provision that amendments of a charter shall be made only at intervals of two years is, to use the language quoted in the opinion in that case from *Blanchard* v. *Hartwell,* 131 Cal. 263, 265, [63 Pac. 349, 350], "to insure some degree of permanency, and to prevent frequent changes," and that such is the constitutional policy established by the provision of the constitution concerned here. If proposed amendments to a charter are defeated at an election by the electors, certainly there could be no contravention of the "constitutional policy calculated to insure some degree of permanency, and to prevent frequent changes," in the exercise of the right to submit proposals for amendments at an election held within two years from the date of the election at which the prior proposals were defeated, for the very obvious reason that the attempt to amend in the first instance would be abortive and the result the same as if no effort had been made in that direction.

But it seems to us that the language itself of the constitutional provision is so clear and definite that there is no necessity for resorting to construction to arrive at its true meaning. It plainly and unambiguously declares that "the charter so ratified may be *amended* at intervals of not less than two years," and then proceeds to point out *how* such proposed amendments may be made—that is, as to the *mode* for exercising the power to *amend*, it provides that such amendments may be made "by proposals therefor submitted by legislative authority of the city, to the qualified voters thereof at a general or special election," etc., and, if ratified by the electors, by approval thereof by the legislature. It is to be noted that the language of the provision is not that amendments of such charter may be *proposed* "at intervals of not less than two years," as counsel's construction of the provision would inevitably compel it to read, but that "the charter may be *amended*" at the intervals prescribed. In other words, the provision grants the power to *amend* and at the same time points out the *mode* by which proposed amendments may be made.

The argument of counsel for petitioner necessarily assumes that the limitation as to time applies to that portion of the

provision prescribing the *mode* of making amendments rather than to that portion granting the right to amend. Of course, it is as apparent as language can make it that there is nothing in the language of the provision warranting any such assumption. The language of the provision of the constitution we are considering could not, in our opinion, be less obscure as to the intention of the framers of our organic law with reference to the subject to which it relates, and if it does not possess the meaning here claimed for it, then, indeed, it must be admitted that the task of finding language which would make a proposition plainer or clearer is well-nigh insurmountable.

Our conclusion is that all the proposed amendments submitted at the prior election, held on the twentieth day of January, 1909, having been defeated by the electors, the respondents are clearly within their rights, under the plain terms of the constitution, in the matter of the submission, at the general municipal election to be held on the third day of May, 1909, proposals for amendments to the charter of the said city of Napa.

Therefore, and for the reasons given in the foregoing, the demurrer to the petition is sustained and the alternative writ herein issued discharged.

*Burnett, J.,* and *Chipman, P. J.,* concurred.