[L. A. No. 1018.  In Bank.—December 29, 1900.]

J. H. BLANCHARD, Appellant, v. WILLIAM A. HART-WELL, City Treasurer, etc., et al., Respondents.

CITY CHARTER—POWER OF AMENDMENT—SECOND BOARD OF FREEHOLDERS—CONSTRUCTION OF CONSTITUTION.—A city charter framed by a board of freeholders, approved by the city, and adopted by the legislature, can only be amended or changed at intervals of not less than two years, in the manner and by the three-fifths vote provided for in section 8 of article XI of the constitution; and a second board of freeholders cannot be elected in such city to frame another charter for the city to be adopted by a majority vote thereof.

ID.—MANDATORY AND PROHIBITORY PROVISIONS—MODE OF AMENDMENT EXCLUSIVE.—The provisions of the constitution in regard to the adoption and amendment of freeholders' charters are mandatory and prohibitory; and the mode of amendment of such charters is exclusively commanded, and all others are prohibited.

APPEAL from a judgment of the Superior Court of Los Angeles County.  M. T. Allen, Judge.

The facts are stated in the opinion.

M. L. Graff, for Appellant.

Walter F. Haas, City Attorney, and R. H. F. Variel, for Respondents.

TEMPLE, J.—This action is by a taxpayer to enjoin the city treasurer of Los Angeles and the city from paying the expenses of a certain board claiming to be a board of freeholders elected to prepare a charter for the city.

The city of Los Angeles already had a freeholders' charter, which was approved by the legislature in January, 1889.  In that year a board of freeholders was again elected which

framed a new charter, which was submitted to the inhabitants of the city for their approval, but was rejected. In July of the present year another board was elected and formally qualified, and is proceeding to prepare a new charter. The case was submitted upon the stipulated facts. The defendants had judgment and plaintiff appeals.

The constitutional provisions bearing upon this matter are contained in section 8, article XI. So far as material here it is as follows: "Any city having the requisite population may frame a charter for its own government by causing a board of fifteen freeholders to be elected to prepare a charter, which, in the mode specified in the section, shall be submitted to the qualified electors of the city; and if approved by a majority of them and by the legislature, it will become the charter of said city and the organic law thereof, and supersede any existing charter and amendments thereof, and all laws inconsistent with such charter." It is then provided, as to amendments: "The charter so ratified may be amended at intervals of not less than two years by proposal therefor, submitted by the legislative authority of the city to the qualified electors thereof, at a general or special election, held at least forty days after the publication of such proposals for twenty days in a daily newspaper of general circulation in such city, and ratified by at least three-fifths of the qualified electors voting thereat, and approved by the legislature as herein provided for the approval of the charter. In submitting any such charter, or amendments thereto, any alternative article or proposition may be presented for the choice of the voters, and may be voted on separately without prejudice to others."

In *People v. Gunn*, 85 Cal. 238, the provisions of this section in regard to the mode of framing and adopting a freeholders' charter in the first instance were discussed, and it was held that the procedure prescribed must be strictly pursued. This conclusion was based largely upon the ground that the procedure was, under constitutional provisions, expressly declared to be mandatory and prohibitory, and it is said "under such provisions the mode is the measure of the power." Upon this point the decision has never been questioned, so far as I am advised.

Since a procedure for the amendment of such a charter is expressly provided, the presumption would be (independently of the declaration that all the provisions of the constitution are mandatory and prohibitory unless the contrary is expressly stated) that such mode is exclusive. Under such a constitution this seems indisputable. The one mode of amendment is commanded, and all others are prohibited.

But every feature of the prescribed mode indicates that it is exclusive. It can be amended only once in two years. This would be a vain restriction if, nevertheless, the charter can be amended by framing a new charter (as remarked at the argument) every sixty days. Here is a clear and positive constitutional policy calculated to insure some degree of permanency, and to prevent frequent changes. Such is the prescribed policy. People may differ as to its wisdom. It certainly is the law. In the second place, it prescribes a different notice from that required upon the adoption of the charter in the first instance, and provides that alternate propositions may be submitted for the choice of electors. These are both important matters, not only providing for greater deliberation, but enabling the electors to decide by direct vote between different proposed policies, thus bringing local self-government nearer to the individual voter. No one should be permitted to deprive the electors of this privilege by compelling them to vote upon a different proposition, to wit, whether they will adopt a new scheme as a whole or not. I regard the right to submit specific amendments as a matter of great importance; but whether important or not such is the constitutional scheme. In the third place, the amendment must be approved by a majority of three-fifths of the qualified electors; a charter may be adopted by a majority vote of such electors. This is also a provision favoring permanence, and against changes made under temporary excitement. What a fatuous limitation or requirement this would be if the policy thus clearly indicated could be defeated by adopting a new charter once in sixty days by a mere majority vote.

A new charter, if it could be framed would be but an amendment of the charter it displaced. In the mode provided every section of an existing charter could be radically changed. A

newly framed charter could adopt all sections of the old, save one. If it was thought desirable to change but one simple provision, and doubts were entertained whether a three-fifths vote could be obtained, schemers, if the power existed, could accomplish their purpose by framing a new charter. In view of such a proposition, how foolish this carefully prepared provision for amendments with its limitations, which has been three times adopted by the people of the state, becomes!

The principle here declared has been approved in numerous cases, among them, in *St. Louis v. Dorr,* 145 Mo. 466[1]; *State v. Chase,* 5 Ohio St. 528; *Argenti v. San Francisco,* 16 Cal. 283; *Zottman v. San Francisco,* 20 Cal. 102[2]; *French v. Teschemacher,* 24 Cal. 550; *Los Angeles Gas Co. v. Toberman,* 61 Cal. 199; *Oakland etc. Co. v. Hilton,* 69 Cal. 479.

*Reeves v. Anderson,* 13 Wash. 17, is not altogether in point. A freeholders' charter there was like ours only in name. The legislature which could amend such charters *ad libitum* provided a mode in which the city councils could be compelled to call an election to elect a board of freeholders to frame "a new charter for said city by altering, changing, revising, adding to, or repealing their existing charter." Since the legislature could do all these things itself, the most important question was whether this was an improper delegation of legislative power. The court held that it was not, and this really settled the case. The chief justice took that view and did not concur in the opinion upon the point here involved. As to that point the opinion, which was not by a majority of the court, merely states, without argument or citation of authority, that the grant of power to frame a charter is a continuing right.

The provisions of the constitution of the state of Washington are not declared to be mandatory and prohibitory, and the charter was at the mercy of the legislature, and when it is added that the opinion was not by a majority of the court it has not much value as authority.

But there a mode was provided by which the council could be compelled to call an election upon a mere petition. Here the movement can only be initiated by the city council—the legislative body of the city. The constitution provides that

---

[1] 68 Am. St. Rep. 575.          [2] 81 Am. Dec. 96.

the city shall cause the election to be held.   The city can only act through its legislature.   Counsel asserted at the argument that the people could initiate the movement under section 1188 of the Political Code, but did not stop to show how under those provisions it could be done.   There is no mode provided in that section or in any other, and as to the city having a freeholders' charter it is at least doubtful if such a law could be enacted, even though it were held that the right to frame a charter is a continuing right.   Nor is it true that to hold that this constitutional mode of amendment is exclusive restricts to any extent the power of the people to cause desired amendments to be proposed, except that this can only be done once in two years.   It would seem as easy to induce the council to submit desired amendments as to induce them to call an election for a board of freeholders, supposing them to have that power.

Harrison, J., McFarland, J., and Van Dyke, J., concurred.

HENSHAW, J., dissenting.—I dissent, under the conviction that the constitutional power to frame a freeholders' charter is a continuing one, not exhausted by its single exercise.

(Judgment of reversal was entered at the October term, 1900, at Los Angeles.)