[Civ. No. 977. Third Appellate District.—April 19, 1912.]

## GUY J. K. BIGELOW, Respondent, v. THE BOARD OF SUPERVISORS OF THE COUNTY OF SONOMA et al., Appellants.

"LOCAL OPTION" IN SUPERVISORIAL DISTRICT—TIME FOR ELECTION—"PRIMARY ELECTION" NOT "GENERAL"—MANDAMUS FOR "SPECIAL ELECTION."—The "primary election" held May 14, 1912, to choose nominees for the presidency at the national conventions of the respective political parties is not a "general election," within the meaning of the "local option" law of 1911, providing for the submission of the question "whether the sale of intoxicating liquors shall be licensed in a" specified "supervisorial district, outside of cities and towns," and where the board of supervisors, in violation of that law, fixed such "presidential primary election" as the time for holding such "local option election," *mandamus* will lie to compel the board to meet and rescind such order, and to call a "special election" in pursuance of said law within not less than thirty nor more than fifty days after the petition has been certified by the county clerk.

ID.—TIME FIXED BY LAW FOR HOLDING "PRIMARY" NOT A TEST OF "GENERAL" ELECTION—ESSENTIAL DISTINCTIONS.—The fact that the laws regulating "primary elections" held in May and September fix a regular time for the holding and recurrence of the same does not render such "primary elections" general elections. In order that an election must be "general" in the true sense employed by the legislature, the election must be one at which every qualified voter of the state, district, or division of the state, where required by law to be held, shall have the right to cast his ballot therein for whomsoever he pleases. But the primary election laws place limitations upon this right to the preference of candidates of a particular party, and take away the right when the registration expresses no party affiliation.

APPEAL from a judgment of the Superior Court of Sonoma County enforcing a *mandamus*. Thos. C. Denny, Judge.

The facts are stated in the opinion of the court.

Clarence F. Lea, G. W. Hoyle, and J. W. Ford, for Appellants.

Ross Campbell, and R. L. Thompson, for Respondent.

CHIPMAN, P. J.—It appears from the complaint that a petition was filed with defendant board, signed by the requisite number of qualified electors of the first supervisorial district of Sonoma county, praying that the said board call an election at which should be submitted to the electors of said district the following proposition: "Shall the sale of alcoholic liquors be licensed in this supervisorial district outside of incorporated cities and towns?" That thereafter, to wit, on March 7, 1912, the county clerk and *ex-officio* clerk of said board duly certified said petition as sufficient and presented the same to the said board as required by law; that in violation of law the said board did, on March 8, 1912, at a regular session thereof, "call a pretended election for May 14, 1912, and at a time more than sixty days from the time said petition was certified as aforesaid, and upon which said last-named date there is no general election to be held in said district, county or state."

The cause came on to be heard on March 16, 1912, and the court ordered the said board "to meet forthwith in legal session and rescind the order of said board made on March 8, 1912, setting an election to determine the question whether the sale of alcoholic liquors shall be licensed in the territory described in the petition, for May 14, 1912, and that they do forthwith make and enter an order of said board of supervisors setting a date for the holding of said election on a legal day not less than thirty days nor more than sixty days from the seventh day of March, 1912, and do and perform all necessary duties to call and hold a special election for the purposes aforesaid according to law."

Defendants appeal from this order and all parties have stipulated that, upon the decision of this court, *remittitur* issue forthwith.

The local option law, section 6, Statutes of 1911, page 601, provides that if the petition for an election is certified within six months and not less than forty days before the holding of "the next general state or general municipal election within the territory described, such question shall be submitted at said general election; otherwise a special election shall be held for such purpose within not less than thirty or more than sixty days after the petition has been certified."

Pursuant to the primary election law, approved April 9, 1911 (Stats. 1911, p. 769), as amended December 24, 1911

(Stats. 1911 [Extra Sessions], p. 66), May 14, 1912, has been designated as the day on which the electors, qualified to vote thereat, are authorized to select delegates "to the national convention to nominate candidates for President and Vice-president of the United States."

The sole question, therefore, is this: Is the presidential primary election a "general election" within the meaning of those terms as used in the local option law?

The Honorable Thomas C. Denny, trial judge, filed a written opinion in the case, which, we think, satisfactorily supports the order. We quote, in part, as follows:

"Section 1 of the 'direct primary law' provides that: 'The words and phrases in this act shall, unless such construction be inconsistent with the context, be construed as follows:

" '1. The words "primary election," any and every primary nominating election provided for by this act.

" '2. The words "September primary election," the primary election held in September to nominate candidates to be voted for at the ensuing November election.

" '3. The words "May presidential primary election," any such primary election, held in May of a bissextile or leap year, as shall provide for the expression of preference in the several political parties for party candidates for President and Vice-president of the United States and for the election of delegates to national party conventions.

" '4. The word "election," a general or city or city and county election as distinguished from a primary election.

" '5. The words "November election," the presidential election, the general state election, county, city or city and county election held in November.'

"It has been generally held that elections are either general or special, general elections being held at stated intervals upon specified dates, and special elections being those held at a time specified in the call for the election. But it seems to me that by the above-quoted section the legislature has recognized a third election in this state, viz., a primary election. This distinction seems also to have been recognized by all of the courts of last resort, as in none of the cases in which the primary election is under discussion is it ever referred to as a 'general' or a 'special' election, but always as a 'primary' election. (See State v. Nichols, 50 Wash. 508, [97 Pac. 728].)

"It is true, as counsel for defendant states, that section 1 of the 'direct primary law' merely defines the use of certain words as used in that act. But it seems to me that the legislature could not have intended that the words as defined therein should have a different meaning from that used in other acts. Thus, in subdivision 1 of section 1, they define the words 'primary election' as any and every primary election provided for by that act; in subdivision 4, that the word 'election' means a general election as distinguished from a primary election; subdivision 5, that the words 'November election' mean, among other things, the general state election. Can it be that we must take from these definitions the meaning that, in primary acts, these words have a distinct and different meaning from that used in the local option act passed at the same session as the presidential primary act? That the words 'November election' in one act means the general state election and that the words 'the general state election' as used in the local option act can mean anything else than the November election, It seems to me that the question must answer itself. And the primary act differentiates and distinguishes a general election from a primary election in such a distinct way that there can be no mistake in the matter.

"Counsel for the defendants also insist that it must have been the intention of the legislature that the presidential primary election should be a general election so far as the local option act is concerned, inasmuch as it is held generally throughout the state and it would get the voters out as a body. But is this position tenable? Would it not have the opposite effect?

"The primary act provides that only those may vote who have, at the time of their registration, designated the party with which they intend to affiliate. By this provision all those who at the time they register refuse to give their party affiliation and all those who register as independents are precluded from voting. It also provides that no political party that failed to poll at least three per cent of the entire vote of the state at the last general election may be represented on the ballot.

"There can be no question but that these provisions would prevent a large percentage of the voters in this state from participating in this election, who in consequence would not at-

tend the primary.  While the local option act is a special election, and if held on the date of the presidential primary those who could not vote at the primary could vote on the local option matter, it is a probability that those who could not vote at the primary would be of the opinion that they could not vote on the local option question and so would not attend.  Thus the privileged class of voters, who alone would be entitled to vote at the primaries, would be the only ones who would vote on the local option question.  The legislature could not have had any such absurd condition of affairs in their minds when they passed the local option act.

"Chief Justice Beatty must have had in mind the fact that there is a distinction between a general election and a primary election when he said, in *Schostag* v. *Cator*, 151 Cal. 604, [91 Pac. 502] : 'It is therefore as reasonable to require the elector to range himself with some particular party for the purpose of the primary election, as it is to require registration of all electors who desire to vote at the general election.  By one registration is secured the right to vote at an election open to all registered voters; by the other is secured the right to vote at an election open to those only who belong to a particular party.'  Can it be possible that an election that is open only to a select coterie of voters instead of to. 'all the registered electors' can be called a general election?  Black, in defining 'general,' says: 'Open or available to all; opposed to select; universal, not particularized; as opposed to special, obtaining commonly, or recognized universally; as opposed to particular; universal or unbounded; as opposed to limited.'  Here we have an election open only to a select, special, particular and limited number of voters, as opposed to a general election which is open to all.

"Is this presidential primary act an election at all in the sense of a general election, and if it is what officers are elected, and to what office?  In a general election it must be true that all of the voters can vote for anyone whom they desire for any office, and that all of the candidates on all of the tickets would be under one ballot.  That is what makes it general as opposed to special.  But in this presidential primary we find but a part of the voters able to vote at all, and each voter ticketed and confined to the ballot of one party. . . .

"For the foregoing reasons I am entirely satisfied that the presidential primary election to be held on May 14, 1912, is not a general election as contemplated by section 6 of the local option act, and that the writ of mandate should issue as prayed for by plaintiff."

The direct primary law, by its designation, by the definitions found in section 1, as well as by its distinguishing characteristics, would seem to be placed out of the category of general elections. The only election denominated a general election by law is the election occurring biennially the first Tuesday after the first Monday of November. (Pol. Code, sec. 1041.) Special elections are defined by section 1043 of the same code. (*Kenfield* v. *Irwin*, 52 Cal. 164; *People* v. *Col*, 132 Cal. 334, [64 Pac. 477].) We have no statutory definition of a primary election except as found in subdivision 1 of section 1 of the act, and there we have the words "primary election" merely construed as referring to "any and every primary nominating election provided for by this act." Subdivision 5 of section 1 defines the words "political party" to be an organization "of electors which at the last general election before the holding of the primary election, polled at least three per cent of the entire vote of the state or of the county, city and county, district, or other political division for which nominations are to be made." Here we have, as well as in subdivision 3, the general election distinguished from the primary election. It is too much to say that a primary election "is no election at all," as some of the cases hold and as contended by respondent. Like any other election, it is the act of choosing a person for the performance of some office or duty and may be even by show of hands. In a sense, too, it is general, for it relates to the whole state geographically. But in its operation it is far from embracing the entire electorate.

In the sense of the elections held in November to choose officers to serve the state, it falls short of measuring up to what is commonly understood by a general election or what we think our law regards as a general election. In *Kenfield* v. *Irwin*, 52 Cal. 164, it was pointed out that the time for holding general elections is fixed by the statute, and hence no proclamation is necessary, but that the time at which special elections were to be held must be previously designated, with-

out which being done the election would be void. It is urged that the primary election law requires no proclamation of the election and fixes the time at which primary elections are to be held, and hence gives to them the character of a general election. The "presidential primary act," so denominated, fixes the time for the first election on May 14, 1912, "and on the second Tuesday in May of every fourth year thereafter." (Stats. 1911 [Extra Sessions], p. 85.) But we do not think that these elections must be held to be general elections because a time is fixed by law for holding them. That is an element entering into the true definition, but it is not in itself enough. To be general in the true sense and in the sense employed by the legislature the election must be one where every qualified voter of the state or district or division of the state, where required by law to be held, shall have the right to cast his ballot for whomsoever he pleases. The general election law gives this right, but the primary election law not only places limitations upon its exercise but withholds it altogether in some instances. The term "election" was held, in *Wickersham* v. *Brittan*, 93 Cal. 34, [15 L. R. A. 106, 29 Pac. 51, 28 Pac. 792], to carry "with it the idea of a choice, in which all who are affected with the choice participate," thereby distinguishing between an election and an appointment. If this be true, it must follow that a *general* election carries with it the idea of a choice in which all the electors who are affected participate. Here we have lacking this indispensable requisite of a general election. In fact, the May primaries do not make the selection of candidates, but they merely give an expression of preference of certain electors, by no means all of them, for their candidates for the presidency. Appellants cite numerous cases showing the distinction between general and special elections, but they do not aid in classifying primary elections, which are of recent origin and designed to meet the demand for a reform method of nominating candidates for office. Appellants cite *Marsden* v. *Herlocker*, 48 Or. 93, [120 Am. St. Rep. 786, 85 Pac. 329], where it is said: "If, by operation of law, the election invariably occurs at stated intervals, without any superinducing cause, except the efflux of time, the election is general." The court was discussing the distinction between general and special elections with reference to the necessity for giving notice of the election by proclama-

tion or otherwise. It said: "The reason for this rule [i. e., dispensing with notice where the time for holding the election is fixed by law] rests upon the doctrine that suffrage is a valuable civil right, to the exercise of which each qualified person is entitled, and he must be given or charged with notice as to when, where, and for what purpose he is to vote." Then follows the statement quoted in appellants' brief. The Oregon act casts upon the county court the duty of ordering "an election to be held at the time mentioned in such petition." All qualified voters could vote at said election and its time being fixed by the county court the opinion spoke of the election as general, but appellants did not complete the paragraph in which, continuing, the court said: "In which case all qualified persons are presumed to have knowledge thereof, and hence the failure of any officer or person upon whom the duty devolves to give a prescribed notice does not invalidate the votes cast thereat." The case throws no light on the question here.

If we were to hold that the primary election law may respond to the numerous statutes where the terms "general election" or "next general election" are used, it would introduce great confusion in our laws, for it will be found that in many statutes the "general election" is mentioned as determining when some act is to be done or some event is to transpire. By the Political Code one definite time has been fixed as answering to these terms, and we think we are unwarranted in holding that the legislature has established a new rule as to what constitutes a general election when referred to in those terms. The case of *Socialist Party* v. *Uhl,* 155 Cal. 776, 788, [103 Pac. 181], is cited and reliance is placed upon the statement in the opinion: "It is obvious from its terms that the law which the legislature was called upon to enact was a law applying to general elections." It certainly does apply to general elections as a sort of forerunner and preparatory step, but this does not imply, and the case did not require the court to decide whether or not the primary election is a general election in the sense used in the local option law. Some force to the argument of counsel for appellants is claimed from expressions in the opinion in *Spear* v. *Baker,* 120 Cal. 370, 378, [41 L. R. A. 196, 52 Pac. 659]: "The legislature, believing a sound public policy demanded such a course, has made these

elections a state institution. By the whole tenor of the act they are placed upon the same plane of the state elections, and in the consideration of the law bearing upon them must be so recognized." The law was held to be unconstitutional, because of its state wide application and its inherent violations of constitutional rights as the constitution then stood. Since then the constitution has been amended and primary elections are now sustained. But a primary law may "apply to general elections," as was said in the Spier case and is now insisted as true, and yet not be a "general election" law as contemplated by the legislature in so using the terms in the local option law.

Appellants have ably presented the argument in support of their contention, but its force, strong as it is, fails to shake our convictions.

The order is affirmed. *Remittitur* forthwith.

Hart, J., and Burnett, J., concurred.