[L. A. No. 13065.   In Bank.—September 1, 1931.]

THE PEOPLE, etc., upon the Relation of OSCAR CONKLIN, Respondent, v. THE CITY OF SAN BUENAVENTURA (a Municipal Corporation) et al., Appellants.

Merle J. Rogers, Robert M. Sheridan and Sheridan, Orr, Drapeau & Gardner for Appellants.

U. S. Webb, Attorney-General, Leon French, Deputy Attorney-General, and Jess E. Stephens for Respondent.

WASTE, C. J.—Oscar Conklin, a resident and taxpayer of the City of San Buenaventura, with the consent of the attorney-general, brought this action in *quo warranto* in the superior court, attacking the validity of the proceedings relating to the adoption of a freeholders' charter for that city. Demurrer to the complaint, interposed by the defendants, was overruled. Defendants declined to answer, and judgment was entered for the plaintiff.

After the charter was prepared and signed by the freeholders, it was filed in the office of the clerk of the city council, duly printed in the official papers, and submitted to the electors of the city, together with the required notice fixing the date for the election to be held thereon. Copies of the charter were printed in convenient pamphlet form, but the council did not, as required by section 8 of article XI of the state Constitution, "until the date fixed for the election upon such charter", or at all, "advertise in one or more papers

of general circulation published in said city a notice that such copies [might] be had upon application therefor".

A majority of the qualified electors of San Buenaventura voted in favor of the charter, and at the succeeding session of the state legislature (1931) it was approved (Assembly Concurrent Resolution No. 7), and was filed with the Secretary of State January 23, 1931. The City of San Buenaventura claims to be now existing under the purported freeholders' charter, and the personally named defendants claim to be members of the city council under the new charter. No fraud is alleged nor attempted to be proved. No claim is made that the failure to "advertise", as required by the Constitution, prevented any voter from intelligently exercising his or her franchise, or that a different result would have obtained if the alleged defect had not existed. The sole contention of plaintiff is that the failure to "advertise" the charter, as required by the Constitution, is a fatal defect, making the action of the legislature in approving the instrument an idle act, and rendering the purported charter of no effect. The appellants argue that the action of the legislature "approving" the purported charter is binding and conclusive in the matter, and cannot be inquired into; and that, granting that the required publication or "advertisement" was not had, there was, in effect, a substantial compliance with the provisions of the Constitution which was sufficient, under the circumstances, to render the omission harmless.

We do not need to go behind the action of the legislature, for the facts in the case definitely and fully appear in the recitals, or findings, contained in the concurrent resolution approving the charter. Two questions, therefore, present themselves for our consideration: First, may any of the provisions of the Constitution of this state relating to the organization of municipal corporations be dispensed with? Second, may "substantial compliance" with such provisions be substituted for actual performance of any of the steps required by the Constitution as prerequisite to some action authorized by the provisions? Both of these questions must be answered in the negative.

■ The Constitution (art. I, sec. 22) makes its provisions "mandatory and prohibitory, unless by express words they are declared to be otherwise". This declaration applies to

all sections of the Constitution alike, and is binding upon any department of the state government, legislative, executive or judicial. (*People* v. *California Fish Co.,* 166 Cal. 576 [138 Pac. 79].) In *People* v. *Gunn,* 85 Cal. 238 [24 Pac. 718], this court followed its decision in an earlier case, and said: "The language of Judge Cooley in his work on Constitutional Limitations, page 78, quoted and adopted in *State* v. *Rogers,* 10 Nev. 253 [21 Am. Rep. 738], is directly in point, and shows that, even in the absence of a clause making its provisions mandatory and prohibitory, the court will not hold the provisions of a constitution to be directory or unessential, but will rather hold that wherever it prescribes a mode, that mode is the measure of power." In *Blanchard* v. *Hartwell,* 131 Cal. 263, 264 [63 Pac. 349, 350], the above doctrine laid down in *People* v. *Gunn, supra,* was approved, and it was held that the provisions for the adoption of a municipal charter were, under constitutional provisions, expressly declared to be mandatory and prohibitory; and it was again said, "under such provisions the mode is the measure of the power". "Such mode", said the court, "is exclusive. Under such constitution this seems indisputable. The one mode . . . is commanded and all others are prohibited." To the same effect is the decision in *Doran* v. *Foster,* 189 Cal. 610 [209 Pac. 548].

Whatever confusion may have existed in the past relative to the status of a freeholders' charter and the resolution of the legislature approving it, the question seems to be now set at rest by the decision of this court in *Taylor* v. *Cole,* 201 Cal. 327 [257 Pac. 40], in which the court held that a legislative resolution approving a freeholders' charter, together with the charter which it establishes is the law of the state, and is conclusive as to the facts so recited in the preamble. It is recited in the preamble to the resolution of the legislature here under consideration, *supra,* that, after the proposed charter was filed in the office of the city clerk of the City of San Buenaventura, it was, by order of the city council, printed and published in full in certain newspapers circulated in the city. It was then printed in "convenient pamphlet form", but no advertisement or other official notice was ordered, had or given that such copies might be had upon application therefor. What actually occurred, as further recited in the preamble, was

that the city clerk "advised" certain reporters of papers published in the city, who were casually in her office, that copies of the charter were ready for distribution, "and then and there suggested and requested that such reporters cause to be published in said newspapers a story or notice (and the city clerk does not remember which word was used) to the effect that such pamphlet copies of the proposed charter were in the office of the city clerk available for distribution and might be had upon application therefor". The newspapers, circulating in the city, carried such information as a news item. It further appears from the preamble that, prior to the election for the approval of the charter, fifteen hundred copies of the charter in pamphlet form were applied for and distributed, and the question of the adoption of a new charter was discussed throughout the city. On these facts, last recited, the appellants contend that there was a sufficient substantial compliance with the mandate of the Constitution regarding the "advertising" of the charter to render the omission to "advertise" harmless. In *Weill* v. *Kenfield*, 54 Cal. 111, 117, this court directly held that it was not at liberty to say that any constitutional prerequisite to the validity of a law is of no practical service, or to consider the policy of a provision when the language seems plain and positive. The parties have gone at length into definitions and refinements of the use of the word "advertise". But to us, in the light of the context and of the purpose of the provision as a whole, the effect, and meaning as well, of the word as used in the Constitution are that the "legislative body" [in this case the council], after the filing with the clerk and the publication of the proposed charter in the official newspaper of the city, was required to literally "advertise", i. e., give officially directed public notice "in one or more papers of general circulation published in said city" that copies of the charter might be had upon application therefor. (See the language of this court in *Clark* v. *Los Angeles*, 160 Cal. 30, at pp. 40, 41 [116 Pac. 722].) An undirected casual request by the city clerk to newspaper reporters looking for news, to run a "story" or news item to that effect is not even a substantial compliance with the Constitution. Aside from such conclusion, the cases which hold that a rule of substantial compliance may be invoked under some circumstances arising under the application of

mere statutory enactments do not apply to the fulfillment of mandatory constitutional requirements.

Section 22 of the Constitution of 1879, making its provisions mandatory, was deliberately inserted by the framers because of certain earlier decisions holding that the provisions of the Constitution of 1849 relating to certain matters were only directory. (*Clark* v. *Los Angeles, supra,* at p. 41.) The reason the framers of the later Constitution insisted on making its provisions mandatory is so well illustrated by the remarks of this court in *People* v. *Johnson,* 6 Cal. 499, 504, that we quote from the opinion written by Mr. Chief Justice Murray: "If a court were at liberty to say at pleasure, that the organic law of the state was directory, then the whole Constitution could be frittered away by judicial decisions, involving in its abrogation the social and political rights of the citizen. Such a power is too dangerous ever to be committed to the arbitrary will of any man or set of men."

As it appears on the face of the assembly concurrent resolution approving the charter that one of the essential steps required by the Constitution to be taken for the adoption and approval by the voters of a municipal freeholders' charter was not taken in this instance, we are compelled to hold that the freeholders' charter of San Buenaventura, submitted to the electors of the city, not having been legally adopted, its purported approval by the legislature amounts to nothing. Neither the City of San Buenaventura nor the other defendants who claim to hold office under the provisions of the freeholders' charter have any corporate rights, privileges, or franchises under its provisions. The trial court properly overruled the demurrer of the defendants, and the judgment thereafter entered in favor of the plaintiff is affirmed.

Curtis, J., Seawell, J., Preston, J., and Shenk, J., concurred.

LANGDON, J., Dissenting.—I dissent. In my opinion the case of *Taylor* v. *Cole* is controlling here, and compels a conclusion contrary to that reached in the foregoing opinion. In that case we upheld the adoption of a charter in spite of failure on the part of the proper officials to advertise the notice of availability of copies. The basis of

the decision is best expressed in the language of Mr. Justice Preston, as follows: (201 Cal. 338 [257 Pac. 40, 44]) : "In the case before us, the Constitution placed upon the legislature the plain duty of seeing that the proceedings by which the charter amendments were proposed were regular in all respects. If jurisdictional defects existed, it was the duty of the legislature to reject the documents tendered as a whole and withhold ratification. The legislature saw fit to accept the certificate of the defendant board and such other evidence as it may have taken and its conclusion that the election was regular is not open to question in court proceedings, at least in the absence of fraud." (See, also, *Fragley* v. *Phelan*, 126 Cal. 383, 403 [58 Pac. 923].)

This proposition necessarily follows from the view that a municipal charter is a statute of the state, and as such is clothed with a presumption of validity. The courts will not, by a resort to evidence outside the act, attempt to determine whether the legislature was warranted in finding that it had been validly adopted. (*Stevenson* v. *Colgan*, 91 Cal. 649 [25 Am. St. Rep. 230, 14 L. R. A. 459, 27 Pac. 1089] ; *People* v. *Sacramento Drainage Dist.*, 155 Cal. 373 [103 Pac. 207] ; *Taylor* v. *Cole, supra; Allen* v. *State*, 114 Ariz. 458 [44 L. R. A. (N. S.) 468, 130 Pac. 1114].)

The majority opinion considers this rule inapplicable because of certain facts recited in the explanatory statement or certificate of the mayor and clerk, which certificate was printed with the act. The recitals, it is said, constitute a defect which appears on the face of the statute. I am unable to agree that the certificate, which is not an essential part of the act, has any such effect; and the preamble shows that the steps leading to the adoption of the charter were considered and found to be correct by the legislature.

I am, moreover, satisfied that the legislative determination was correct, in that there was in this case a sufficient compliance with the constitutional requirements. Conceding that the provision in question is *mandatory,* there is nothing to indicate that an absolutely *literal* compliance is necessary, or even possible. The requirement is that a certain fact be advertised, and its purpose is obviously to give notice to the people of the community that they may secure copies of the charter. The Constitution does not prescribe the form of the advertisement, its size, or its content; it provides for

publication in *one or more* papers, and consequently permits the insertion of a single, small and unimpressive announcement in one newspaper. It is not even stated that there. must be a *paid* advertisement. In the instant case there were printed in several papers the facts required to be brought before the people by the constitutional provision; and almost the entire stock of printed copies of the charter was exhausted by distribution to persons calling for such copies. In view of the vague phraseology of the provision, and its manifest purpose, is it reasonable to say that the proceedings taken in this case were fatally defective? I think not. There was a substantial compliance with the mandatory requirement, and the net result of the method employed was to carry out the purpose of the requirement much more effectively than by an insignificant paid advertisement in one paper, which latter notice would admittedly be sufficient.

I am convinced that the charter was validly adopted and that the attack upon it is groundless.