[S. F. No. 18149. In Bank. May 28, 1951.]

THE PEOPLE ex rel. ALBERT J. LEVIN, Respondent, v. COUNTY OF SANTA CLARA et al., Defendants; FRED A. WICKETT, Intervener and Appellant.

Campbell, Hayes & Custer, Edwin J. Owens and Robert E. Hayes for Intervener and Appellant.

Frederick N. Howser, J. B. Peckham, John M. Machado, Peter J. Mancuso and Raymond G. Callaghan for Respondent.

CARTER, J.—The trial court invalidated a charter adopted by defendant, Santa Clara County (Stats. 1949, Conc. & Joint Resol., ch. 156, p. 3294) pursuant to section 7½ of article XI of the Constitution on the ground that the publication of the charter prior to the vote thereon was faulty.

A charter may be adopted by a county by following specified procedure set forth in the Constitution. After a board of freeholders has been elected and drafted a proposed charter, the county board of supervisors "shall thereupon cause said proposed charter to be published for at least 10 times in a daily newspaper of general circulation, printed, published and circulated in said county . . ." (Cal. Const., art. XI, § 7½). Thereafter the charter is submitted to the electors. After it is adopted by the electorate, it is submitted to the Legislature, which must approve or reject it as a whole before it becomes effective. (Cal. Const., art. XI, § 7½.)

Here the charter was approved by the electors. Proceedings were then instituted to prevent its submission to the Legislature on the same ground advanced in the instant case (defect in publication) but they were unsuccessful. (*Santa Clara County* v. *Superior Court,* 33 Cal.2d 552 [203 P.2d 1].) The charter was submitted to the Legislature and a resolution approving it was adopted. (Stats. 1949, p. 3294, Conc. & Joint Resol., ch. 156.) The resolution recites, however, the proceedings by the local authorities, stating that the charter was published for at least 10 days (September 16th to September 25th, inclusive) but "That during the course of the ten day publication of the . . . Charter as aforesaid, in certain publications thereof, to-wit, in those published and circulated on the 17th, 18th, 19th, 20th, and 21st days of September, 1948, there was a break in the sequence of the context of the Charter, which break arose from the fact that certain sections of

said Charter, as more particularly set forth in Exhibit 'C' annexed hereto, were not in numerical sequence nor were the sentences in Sections 202, 303 and 402 as appearing in said publications (see Exhibit 'C') in exact conformance with the sections of the proposed Charter. That in the printing, publishing, and circulating of said proposed Charter on the 16th, 22nd, 23rd, 24th and 25th days of September, 1948 the wording thereof was in exact conformance of the Charter as prepared and proposed by the duly elected and qualified Board of fifteen Freeholders and as submitted and filed thereby.

"That attached hereto, marked Exhibit 'B,' and made a part hereof by this express reference and incorporation is a newspaper publication of said proposed Charter in the San Jose Mercury Herald as it was published on the 16th, 22nd, 23rd, 24th and 25th days of September, 1948.

"That attached hereto, marked Exhibit 'C', and made a part hereof by this express reference and incorporation is a newspaper publication of said proposed Charter in the San Jose Mercury Herald as it was published on the 17th, 18th, 19th, 20th, and 21st days of September, 1948." (Stats. 1949, ch. 156, p. 3296.) It is that defect in publication which it is claimed voided the charter. It must first be determined, however, to what extent, if at all, a court will examine the regularity of charter adoption proceedings occurring before the passage of the resolution by the Legislature approving the charter.

It has been held that when an act of the Legislature is valid on its face, properly enrolled, authenticated and filed, it is conclusively presumed that all of the steps required for its passage have been properly taken; even the journal of the Legislature is not available to impeach it. (*Spaulding* v. *Desmond*, 188 Cal. 783 [207 P. 896]; *Sherman* v. *Story*, 30 Cal. 253 [89 Am.Dec. 93], overruling *Fowler* v. *Pierce*, 2 Cal. 165; *County of Yolo* v. *Colgan*, 132 Cal. 265 [64 P. 403, 84 Am.St.Rep. 41]; *People* v. *Burt*, 43 Cal. 560; *People* v. *Harlan*, 133 Cal. 16 [65 P. 9]; *Parkinson* v. *Johnson*, 160 Cal. 756 [117 P. 1057]; *Taylor* v. *Cole*, 201 Cal. 327 [257 P. 40]; *People* v. *Camp*, 42 Cal.App. 411 [183 P. 845]; *People* v. *Peete*, 54 Cal.App. 333 [202 P. 51]; see *Oroville & V. R. R. Co.* v. *Plumas County*, 37 Cal. 354; *Harpending* v. *Haight*, 39 Cal. 189 [2 Am.Rep. 432]; *Sacramento Paving Co.* v. *Anderson*, 1 Cal.App. 672 [82 P. 1069]; *Santa Clara County* v. *Superior Court, supra*, 33 Cal.2d 552.)

That rule has been criticized. (1 Stanford L.Rev., 428;

Sutherland, Statutory Construction (3d ed.) §§ 1403-6.) Elsewhere the authorities are split, some holding that they will look behind the statute. It has been said: ''Where the failure of constitutional compliance in the enactment of statutes is not discoverable from the face of the act itself but may be demonstrated by recourse to the legislative journals, debates, committee reports, or papers of the governor, courts have used several conflicting theories with which to dispose of the issue. They have held: (1) that the enrolled bill is conclusive and like the sheriff's return cannot be attacked; (2) that the enrolled bill is *prima facie* correct and only in case the legislative journal shows affirmative contradiction of the constitutional requirement will the bill be held invalid; (3) that although the enrolled bill is *prima facie* correct, evidence from the journals or other extrinsic sources is admissible to strike the bill down; (4) that the legislative journal is conclusive and the enrolled bill is valid only if it accords with the recital in the journal and the constitutional procedure. . . . At the present time the tendency seems to be toward the abandonment of the conclusive presumption rule and the adoption of the third rule leaving only a *prima facie* presumption of validity which may be attacked by any authoritative source of information.'' (Sutherland, Statutory Construction (3d ed.) § 1402.) Starting with the premise that the approval or rejection of a county or city home rule charter by the Legislature and the steps taken by the local authorities, including the vote of the people, are a part of the process of enacting a legislative act (*Santa Clara County* v. *Superior Court, supra,* 33 Cal.2d 552; *Taylor* v. *Cole, supra,* 201 Cal. 327; *Spaulding* v. *Desmond, supra,* 188 Cal. 783), this court has extended the rule to include such steps and held that it will not look beyond the resolution of the Legislature approving the charter. (*Taylor* v. *Cole, supra*; *Spaulding* v. *Desmond, supra*; *People* v. *City of San Buenaventura,* 213 Cal. 637 [3 P.2d 3].) And in reaching that result, *Taylor* v. *Cole, supra,* overruled *People* v. *Gunn,* 85 Cal. 238 [24 P. 718]. In the Gunn case, it was claimed that the charter had not received sufficient votes and other constitutional provisions had not been followed. The court held that the Legislature does not exercise legislative or ''law making'' power in approving or rejecting a charter, and hence cannot determine the regularity of the proceedings by the local authorities for the adoption of the. charter; that such is a court function. Following the Taylor case is *People* v. *City of San Buenaven-*

*tura, supra,* 213 Cal. 637, where the defect was a failure to advertise the charter. The Taylor case was approved in its holding that ". . . a legislative resolution approving a freeholders' charter, together with the charter which it establishes is the law of the state, and is *conclusive as to the facts so recited in the preamble.*" But the court concluded by stating: "As it appears *on the face* of the assembly *concurrent resolution* approving the charter that one of the essential steps required by the Constitution to be taken for the adoption and approval by the voters of a municipal freeholders' charter was not taken in this instance, we are compelled to hold that the freeholders' charter of San Buenaventura, submitted to the electors of the city, not having been legally adopted, *its purported approval by the legislature amounts to nothing.*" (Emphasis added.) (*People* v. *City of San Buenaventura,* 213 Cal. 637, 640, 642 [3 P.2d 3].) ■ Thus the holding is that if irregularity in the proceedings by the local authorities appears *on the face* of the legislative resolution, the approval by the Legislature is not conclusive, as it would be, if it was not revealed by the resolution. The San Buenaventura case was followed by *Butters* v. *Board of Supervisors,* 217 Cal. 515 [19 P.2d 983] and *Ault* v. *Council of City of San Rafael,* 17 Cal.2d 415 [110 P.2d 379], where the court gave consideration to the regularity of the proceedings by local authorities before the charter was submitted to the Legislature, but did not discuss the question of the jurisdiction of the Legislature to determine that question by approving or rejecting the charter, a problem later herein discussed. The distinction made in the San Buenaventura case (between a defect in the local proceedings appearing on the face of the resolution and one that did not) was approved by this court in *Santa Clara County* v. *Superior Court, supra,* 33 Cal.2d 552, the latest case on the subject, for there it was concluded that the proceedings taken by the local authorities were a part of the legislative process and we there approved *Taylor* v. *Cole, supra,* 201 Cal. 327, saying that the *constitution* imposed upon the Legislature the duty of seeing that the steps taken by the local authorities complied with the constitution when it authorized the Legislature to approve or reject the charter *in toto.* *People* v. *City of San Buenaventura, supra,* 213 Cal. 637, was also approved, however, in holding that the charter could be attacked where the defect appeared on the face of the legislative resolution.

Since the defect in the proceedings for the adoption of the charter prior to its submission to the Legislature appears on

the face of the resolution adopted by the Legislature approving the charter here involved, the court will examine the regularity of such proceedings and determine whether or not the constitutional requirements have been met and the document submitted is or is not a valid county charter.

█ On the question of the sufficiency of the publication, it appears on the face of the resolution adopted by the Legislature (quoted *supra*) that five publications were an exact copy of the charter. In the other five, the following errors were made in which parts of the context of some sections were placed in other sections, as follows: The charter correctly reading is: ''Section 202. Qualification of Supervisors. The County of Santa Clara shall have a board of Supervisors consisting of five members, one member to be elected from each supervisorial district. In order to be eligible for election or appointment each supervisor must have been a qualified elector in the district he represents for the period of at least two years immediately preceding his election or appointment, and must continue to reside therein during his incumbency in office.

''Section 303. Clerk of the Board of Supervisors. The Clerk of the Board of Supervisors shall keep the minutes of said board and shall make full records of all proceedings had before it and shall have custody of all minutes, books, and records pertaining to such proceedings and shall render all clerical services required in the conduct of the business of said board or incidental thereto.

''Section 402. Term of Office and Emoluments. The County Executive shall serve at the will of the appointing authority, provided however, that the County Executive first appointed under this charter may not be removed within one (1) year from the date on which he assumes his duties except for cause which would justify the removal of an elected county officer under the provisions of general law.

''The County Executive shall receive a salary which shall be fixed by the Board of Supervisors prior to his appointment, and annually thereafter, in the salary ordinance, except that in the first five years of the operation of this charter the salary shall in no instance be less than $10,000 per annum.''

But as published it read: ''Section 202. Qualification of Supervisors. The County of Santa Clara shall have a Board of Supervisors consisting of five members, one member to be

elected from each supervisorial district, *in the conduct of the business of said board or incidental thereto.*

"Section 303. Clerk of the Board of Supervisors. The Clerk of the Board of Supervisors shall keep the minutes of said board and shall make full records of all proceedings had before it and shall have custody of all minutes, books, and records pertaining to such proceedings and shall render all clerical services required *duties except for cause which would justify the removal of an elected county officer under the provisions of general law.*

"*The County Executive shall receive a salary which shall be fixed by the Board of Supervisors prior to his appointment, and annually thereafter, in the salary ordinance, except that in the first five years of the operation of this charter the salary shall in no instance be less that $10,000 per annum.*

"Section 402. Term of Office and Emoluments. The County Executive shall serve at the will of the appointing authority, provided, however, that the County Executive first appointed under this charter may not be removed within one (1) year from the date on which he assumes his. *In order to be eligible for election or appointment each supervisor must have been a qualified elector in the district he represents for the period of at least two years immediately preceding his election or appointment, and must continue to reside therein during his incumbency in office.*"

The portion in italics is the misplaced material. It is thus seen that although all of the contents of the charter was published for 10 days, yet on 5 days, a portion of the contents was garbled. It should be clear that the error rendered five publications, as to three sections of the charter, in part, unintelligible. The sections are widely spaced and it would take a diligent search to bring the contents together to make sense. The effect is not only the same as if material were omitted from three sections of the charter, but an erroneous impression would be gained as to the meaning of the part not omitted.

██ Compliance with constitutional requirements is mandatory and prohibitory (Cal. Const., art. I, § 22; *People* v. *Gunn, supra,* 85 Cal. 238; *People* v. *City of San Buenaventura, supra,* 213 Cal. 637; *Santa Clara County* v. *Superior Court, supra,* 33 Cal.2d 552; *Blanchard* v. *Hartwell,* 131 Cal. 263 [63 P. 349]). ██ While substantial compliance has been held to suffice under some circumstances (see *California Teachers Assn.* v. *Collins,* 1 Cal.2d 202 [34 P.2d 134]; *Perry* v.

*Jordan,* 34 Cal.2d 87, 94 [207 P.2d 47]) such compliance, as above indicated, is not present in this case.

The judgment is affirmed.

Gibson, C. J., Shenk, J., and Schauer, J., concurred.

SPENCE, J.—I dissent.

The solution of this controversy appears to rest upon the determination of two main questions: First, whether substantial compliance with our constitutional provisions will suffice to render valid the adoption of a proposed county charter; and second, if so, whether there was such substantial compliance in the present case. In my opinion, both questions should be answered in the affirmative.

While the majority opinion concedes that "substantial compliance will suffice *(Perry* v. *Jordan,* 34 Cal.2d 87, 94 [207 P.2d 47]; *California. Teachers Assn.* v. *Collins,* 1 Cal.2d 202 [34 P.2d 134]), there is contrary language in certain earlier decisions of this court *(People* v. *City of San Buenaventura,* 213 Cal. 637 [3 P.2d 3]; *People* v. *Gunn,* 85 Cal. 238 [24 P. 718]). In my opinion the language found in those earlier cases should be disapproved, for such language is not in harmony with the position taken by this court in the later cases above cited. Furthermore, to hold that an absolutely literal compliance in every phase of every step is a prerequisite to the adoption of a valid charter is to exalt form above substance, and would compel the invalidation of charter proceedings for the failure to dot an "i" or to cross a "t," or for any other minor defect in a publication which might be of no substantial significance. Any such rule would tend to bring the law into disrepute and to give color to the claim that justice is administered in a hypertechnical manner without regard to the realities.

Assuming, then, that a substantial compliance with our constitutional provisions is sufficient, the facts presented by the record before us clearly show such substantial compliance. It is not claimed that any step required by the Constitution was entirely omitted, but only that one of the steps was imperfectly executed in that 5 of the 10 required publications of the proposed charter were not letter perfect. Between the first publication on September 16, 1948, and the last four publications on September 22, 23, 24, and 25, 1948, all of which publications were "in exact conformance" with the sections of the proposed charter, there were certain errors made in the five intervening publications, which errors are set forth

in the majority opinion. In these intervening publications the entire text was published but there was a slight transposition in three out of 71 sections of the charter. It seems entirely clear that the errors were of a minor nature, and that the effect, if any, upon the electors who might have read the slightly erroneous publications, instead of the perfect publications, would have been to incline such electors to vote against, rather than in favor of, the adoption of the proposed charter. The charter was nevertheless approved by a large majority of the electors. I therefore believe that it should be held here that there was a substantial compliance, for any other conclusion will result in thwarting the will of the vast majority of the electors without any compelling reason for so doing.

The disapproval of certain language used in *People* v. *City of San Buenaventura, supra,* 213 Cal. 637, would not imply that the decision should be overruled. The situation in that case is clearly distinguishable. There it affirmatively appeared on the face of the concurrent resolution that one entire step required by the Constitution for the adoption of a charter had been omitted. It was there held that it is not for the courts to say that such entire step could be omitted when the Constitution provided otherwise. But if, as here, it affirmatively appears on the face of the concurrent resolution that every step was completed in exact conformance with the constitutional requirements, except for certain typographical errors which crept into some of the publications involved in completing the publication step, then it is for the courts to determine whether such errors were of such minor nature that there was nevertheless substantial compliance with the constitutional requirements.

As stated by Mr. Justice McFarland in his concurring opinion in *People* v. *Gunn, supra,* 85 Cal. 238, 250: "Because the constitution declares the provisions to be mandatory, it does not follow that a *substantial* compliance with them is not sufficient. The proceedings for the adoption of a charter will probably never be so literally perfect that a critical and hostile eye cannot detect in them some slight defect or irregularity, which ought not to be considered fatal. Whether or not there has been a sufficient compliance with the constitution in any particular case must depend on the particular facts of that case."

That principle has been adopted in the more recent decisions above cited. It is not necessary here to attempt to specify the limits of those minor errors which may be deemed to be

inconsequential within the substantial compliance rule. It seems clear, however, that if, as in the present case, it may be said with certainty that such minor errors in certain publications could have tended only to result in unfavorable, rather than favorable, votes on the question of the adoption of the proposed charter, then such errors should be held to be so inconsequential as not to invalidate the entire proceedings for the adoption of the proposed charter.

The Legislature here has approved the proposed charter despite the minor errors in some of the publications. It has impliedly found and concluded that there was a substantial compliance with the constitutional provisions. It has frankly shown the extent of such minor errors on the face of the concurrent resolution so as to permit judicial review of its findings and conclusions under the rules set forth in *Taylor* v. *Cole,* 201 Cal. 327 [257 P. 40], and *People* v. *City of San Buenaventura, supra,* 213 Cal. 637. Upon this judicial review, I am of the opinion that the Legislature was correct in its findings and conclusions, and that this judicial review should result in the validation, rather than the invalidation of the charter.

For the reasons stated, I would reverse the judgment of the trial court, with directions to enter judgment in favor of defendants.

Edmonds, J., and Traynor, J., concurred.

Intervener and appellant's petition for a rehearing was denied June 25, 1951. Edmonds, J., Traynor, J., and Spence, J., voted for a rehearing.