[Civ. No. 17742.   First Dist., Div. One.   June 5, 1957.]

COUNTY OF ALAMEDA, Petitioner, v. LELAND W. SWEENEY, as Chairman of the Board of Supervisors, etc., et al., Respondents.

J. F. Coakley, District Attorney, R. Robert Hunter, Chief Assistant District Attorney, Richard J. Moore and John A. Lewis, Deputy District Attorneys, for Petitioner.

Hubert W. Bryant for Respondents.

BRAY, J.—Petition for writ of mandate to compel the county clerk and ex officio clerk of the board of supervisors of Alameda County and the chairman of the board to file and record a transcript of Assembly Concurrent Resolution Numbers 54 (Stats. 1957, ch. 60) approving certain amendments to the Alameda County charter, duly authenticated and certified by the Secretary of State as required by section 7½, article XI, Constitution.[1]

### QUESTIONS PRESENTED

1. Does the legislative approval of the charter amendments appear valid on its face (a) as to the special election called, (b) as to the alleged general election? This question, in turn, depends upon whether a primary election is a "general" election within the meaning of section 7½, article XI, Constitution.

---

[1]Section 7½ provides that after approval of amendments to a charter by the Legislature, a copy of the amendments certified and authenticated by the Chairman and Clerk of the Board of Supervisors shall be made in duplicate and filed, one in the office of the Secretary of State and the other, after being recorded in the office of the County Recorder, shall be filed in the office of the County Clerk.

RECORD

Alameda County adopted a county charter in 1927 and ever since has been acting thereunder. On April 17, 1956, the board of supervisors adopted Resolution Number 79501 ordering submitted to the qualified electors of the county at an election to be held June 5, 10 proposed amendments to the county charter. The resolution ordered that the proposed 10 amendments as therein set forth be published 10 times in the Oakland Tribune. This set forth the proposals in full. The notice was so published. May 8, Ordinance Number 189 N.S. was adopted stating that "the public interest requires the holding of a special county election" to submit to the electors certain proposals to amend the charter and calling "a special county election" for June 5. This was the date of the statewide direct primary and presidential primary election. The ordinance ordered that the special election be consolidated with the consolidated primary election and that officers of the special election be the persons named as such for the consolidated primary election, and provided that the ordinance be published in the Berkeley Gazette for five days. At the election three of the amendments, propositions "A," "B," and "C" were ratified by the voters. Thereafter the board of supervisors certified and authenticated to the Legislature a copy of said ratified proposals together with certain recitals. The Legislature, by Assembly Concurrent Resolution Number 54, approved the three charter amendments. February 5, 1957, by Resolution Number 82594, the board of supervisors directed respondents to authenticate, certify, record and file copies of the amendments as provided in section 7½. Respondents in writing refused so to do on the ground that they had honest doubts as to whether publication of notice of the election had been fully and strictly complied with as required by section 7½.

1. *Invalidity of Special Election Appearing on Face of Resolution.*

The parties agree that the ratification of charter amendments by the Legislature has all the essence of a plain legislative enactment (see *Taylor* v. *Cole,* 201 Cal. 327, 334 [257 P. 40]) ; that the legislative resolution is conclusive as to the facts recited in the resolution (see *People* v. *City of San Buenaventura,* 213 Cal. 637, 640 [3 P.2d 3]) ; that if no irregularity appears on the face of the legislative enactment the courts may not go behind the enactment to determine if the facts

there recited are true. (See *Taylor* v. *Cole, supra,* 201 Cal. 327; *People* v. *County of Santa Clara,* 37 Cal.2d 335, 339 [231 P.2d 826].) ■■ The rule is, too, that "if irregularity in the proceedings by the local authorities appears *on the face* of the legislative resolution, the approval by the Legislature is not conclusive, as it would be, if it was not revealed by the resolution." (*People* v. *County of Santa Clara, supra,* at p. 339.)[2]

■■ Thus, we must look to the recitals in the legislative resolution and determine whether any irregularity appears on its face. Section 7½ requires that an ordinance calling a special election to amend a county charter shall be published five times. The preamble of Concurrent Resolution Number 54 recites the enactment by the board of supervisors of Alameda County of Ordinance Number 189 N.S. calling for a special election to consider the proposed charter amendments, and among other matters, ordering the publication of said ordinance five times in a certain newspaper. It then states "and said ordinance was duly published in full and at length . . . in the Berkeley Daily Gazette on May 21, 1956." The only reasonable conclusion from this recital is that the ordinance was published only on May 21—only once and not five times as required by section 7½ and the ordinance itself and that therefore the resolution shows irregularity on its face— the failure to publish the ordinance as required by law.[3] (See *People* v. *City of San Buenaventura, supra,* 213 Cal. 637.) Thus, if the election or the resolution depends for validity on the holding of a special election, proper notice was not given and the election and resolution are void.

## 2. *Is a Primary Election a General Election?*

Petitioner contends that the election may be sustained as a general election. Section 7½ provides, in effect, that proposals to amend a county charter may be submitted at a

---

[2] Petitioner argues that even though an irregularity appears on the face of the recitals in the resolution, nevertheless the courts may not interfere, because, says petitioner, if jurisdictional defects existed, it was the duty of the Legislature to reject the documents tendered as a whole and reject ratification. Having accepted the certificate of the clerk and chairman of the board of supervisors it will be presumed the Legislature took other evidence which overcame any defect and the courts are bound by the Legislature's approval of the charter amendments. This was the effect of the dissenting opinion in *People* v. *San Buenaventura, supra,* 213 Cal. 637, 643. Such a rule, however, has not been adopted. See majority opinion in the San Buenaventura case and *People* v. *County of Santa Clara, supra,* 37 Cal.2d 335, 339.

[3] It is conceded that the ordinance actually was published only the once.

general election by a resolution (rather than by an ordinance as required for submission at a special election). It requires that the amendment proposals be published 10 times (rather than as in the case of a special election, that the ordinance be published five times). The preamble in Resolution Number 54 recites: "WHEREAS, the Board of Supervisors of said County, pursuant to the provisions of section 7½ of Article XI of the Constitution of said State, ordered said proposals submitted to the qualified electors thereof at a general election held not less than thirty (30) days nor more than sixty (60) days after the publication of such proposals for ten (10) times, to-wit; at the regular state-wide Consolidated Primary Election to be held on June 5, 1956, which is a general election for the purpose of amending County Charters within the purview of Section 7½ of Article XI and Section 2¾ of Article II of the Constitution of said State, and out of due caution, and not as a determination to proceed by way of special election, and solely to avoid long delay in carrying out the mandate of the voters who approved such amendments by overwhelming majorities or subjecting them to very substantial costs of a county-wide special election, in the event a court might hold the Consolidated Primary Election not to be a general election within the purview of the Constitutional provision, the Board of Supervisors on the 8th day of May, 1956, duly enacted Ordinance No. 189 N.S. calling and ordering the holding of a special county election . . ." It also recites that the proposed amendments were duly published for 10 times, giving the dates of publication.

Respondents contend that the resolution referred to in the preamble did not order the amendment proposals to be submitted at a general election. However, this recital in the preamble is a finding by the Legislature that the resolution did. We are bound by that finding. ". . . where the existence of a fact is necessary to support the validity of a legislative enactment, it will be conclusively presumed in support of such enactment that evidence was heard and facts ascertained which authorized the legislature to proceed. In other words, questions of law only, unmixed with questions of fact, will be considered in determining the validity of a legislative enactment." (*Taylor* v. *Cole, supra,* 201 Cal. at pp. 336-337.) If as a matter of law the primary election is not a general election under the Constitution the resolution designating it a general election could not make it so. Therefore we are required to determine whether

the direct primary election is a general election within the meaning of section 7½. If it was, the election was held in accordance with the requirements of the section. That section merely uses the words "a general election." It does not define them.

The only case flatly considering whether the direct primary election could be a general election, held that it could not. In *Bigelow* v. *Board of Supervisors* (1912), 18 Cal.App. 715 [124 P. 554], the Board of Supervisors of Sonoma County submitted to the electors at a presidential primary election a proposal to license the sale of alcoholic liquors. The local option law under which the election was held, required that such a proposal be submitted at a "general election." The court held the election to be void, stating that a presidential primary was not a general election within the meaning of the local option law. It pointed out that at the presidential primary election, as the law then stood, only those might vote who at the time of their registration, designated the party with which they intended to affiliate; all persons who refused to give a party affiliation or who registered as independents or who designated affiliation with a party which had not polled at the preceding election at least 3 per cent of the entire state vote of the last general election were precluded from voting. Thus, the election being only open to a "select coterie of voters" (p. 719) could not be a general election. It pointed out further that there was more than one ballot and that each voter was ticketed and confined to the ballot of one party, and therefore it could not be a general election. It gave as tests of a general election, among others, whether or not all of the voters can vote for anyone whom they desire for any office and whether all of the candidates on all of the tickets would be under one ballot. Since the Bigelow case the direct primary law has been changed. Most of the offices voted for at the direct primary election are now nonpartisan offices,[4] and the election constitutes the final election as to nonpartisan candidates who receive a majority of the votes. No elector is denied the right to vote for nonpartisan candidates because of lack of party designation or other reason. The test of the Bigelow case of one ballot and the right to vote for all candidates is not met at the direct primary, for each party has

[4]This, of course, is not true of the presidential primary which is consolidated with the direct primary. However, the consolidation of the presidential primary would not affect the question here, if the direct primary is a general election.

a separate ballot and the elector who has designated a party can vote for a candidate of the other party only if such candidate has qualified on the elector's ballot. Nevertheless, the primary election for many purposes is a general election. *McClintock* v. *Abel,* 21 Cal.App.2d 11 [68 P.2d 273], stated that the effect of the adoption of section 2¾, article II, of the Constitution was "to transmute a primary election held for the purpose of nominating candidates, into a general election of those nonpartisan officers receiving in the primary a majority of all votes cast for their respective offices." (P. 16.) This case held that the contest provision of the direct primary law applied only to the persons *nominated* at the primary and did not apply to those elected there. See *Doran* v. *Biscailuz,* 128 Cal.App.2d 55, 60 [274 P.2d 691], holding that the general election contest provisions of the Elections Code applied to contests of the primary election, because the primary election is a general election as to nonpartisan officers receiving a majority of the votes cast.

In *Donnellan* v. *Hite,* 139 Cal.App.2d 43 [293 P.2d 158], in construing section 71180, Government Code, dealing with election of appointees to the municipal court, the court stated that "the primary election has been, in legal effect, insofar as nonpartisan offices are concerned, a general as distinguished from a nominating election." (P. 46.) The court further referred to "a primary election which is in legal effect a general election." (P. 47.) The court held that the requirement of election "at the general state election" meant the primary election.

In *People* v. *Town of Berkeley,* 102 Cal. 298 [36 P. 591, 23 L.R.A. 838], the court held that the annual election provided by law for the election of municipal officers was a "general election" at which a proposal for reorganization of the town as a city of the fifth class could be submitted under a constitutional provision providing for the submission of such a proposal "at a general election," (Const., art. XI, § 6) and a statute providing for submission "at the next general election." The court said (p. 306): "It is true that the words 'general election' are ordinarily used to designate one at which state and county officers are elected, but we know of no provisions in the constitution or statutes limiting them to such an election."

"A regular or general election is one which recurs at stated intervals as fixed by law; it is one which occurs at stated intervals without any superinducing cause other than

the efflux of time. . . . In application of the foregoing rules, it is held that the term 'general election' embraces a primary election occurring at regular intervals . . ." (18 Am.Jur. p. 181, § 5.)

■ Section 7½ obviously did not contemplate that "*a* general election" there mentioned meant only "*the* general election" provided by section 23, Elections Code. If so, the municipal election which in *People* v. *Town of Berkeley, supra,* 102 Cal. 298, was held to be a general election could not have been such. *Schutz* v. *Merrill,* 96 Cal.App. 58, 63 [273 P. 863], in holding that the words "general election" in the then section 1094, Political Code, had a broader meaning than the use made of the words in section 1041, Political Code (now Elec. Code, § 950, providing for *the* general election in November) quoted with approval the Town of Berkeley case.

■ All of the attributes of a general election so far as they pertain to the requirements of section 7½ are now present at the direct primary election. It occurs at stated intervals as fixed by law without any superinducing cause other than the efflux of time. All electors in addition to the notice of the proposals to be presented required by section 7½, receive as full notice of the election and of the measures to be voted on as at *the* general election. No elector is denied a ballot; he may vote on all measures submitted at the election and for all candidates except only certain partisan candidates for party nomination. The fact that he is denied the privilege of nominating a candidate of a party not of his choice does not take away the general election aspects of the election in view of all the other aspects of the election.

*City Council of San Jose* v. *Goodwin,* 196 Cal. 274 [237 P. 548], dealt with a proposal to increase the tax rate. The city charter provided that such a proposal must be submitted "at a general or special election." It was submitted at a primary election provided for in the charter. It was held that such an election was neither "a general or special election" because the charter "by unmistakable terminology" (p. 277) clearly distinguished the primary election from the other two. That the case is not authority upon the question we are dealing with is shown by the court's statement (p. 277) that "It may be assumed that the essential elements of a general election as defined" in *Bigelow* v. *Board of Supervisors, supra,* 18 Cal.App. 715, may be attached to the primary election provided for by the charter.

■ "The provisions of the Constitution must receive a

liberal, practical common-sense construction . . ." (*McMillan v. Siemon*, 36 Cal.App.2d 721, 726 [98 P.2d 790].) They should be construed where possible to meet changed conditions and the growing needs of the people. (*Veterans' Welfare Board v. Jordan*, 189 Cal. 124, 143 [208 P. 284, 22 A.L.R. 1515].) We are mindful of the statement in *Bigelow v. Board of Supervisors, supra,* 18 Cal.App. at page 722: "If we were to hold that the primary election law may respond to the numerous statutes where the terms 'general election' or 'next general election' are used, it would introduce great confusion in our laws, for it will be found that in many statutes the 'general election' is mentioned as determining when some act is to be done or some event is to transpire. By the Political Code one definite time has been fixed as answering to these terms, and we think we are unwarranted in holding that the legislature has established a new rule as to what constitutes a general election when referred to in those terms." That references to "*a* general election" does not necessarily mean "*the* general election" in spite of the outmoded language in the Bigelow case, has been hereinbefore demonstrated. If the quoted paragraph is to be interpreted as giving a narrow definition in every event that the only general election is *the* general election, it is no longer the law. ■ To hold, however, that every reference in the Constitution or the statutes to "a general election" includes the primary election, would be giving too broad an interpretation, and might bring about the said confusion. We are limiting our interpretation to the words expressed in section 7½. There may well be instances in other portions of the Constitution and in the statutes where such an interpretation would be contrary to their intent.

■ The demurrer to the petition for writ of mandate is overruled. Let a peremptory writ of mandate issue directing that respondents Leland W. Sweeney as Chairman of the Board of Supervisors of the County of Alameda and Jack G. Blue as County Clerk of the County of Alameda and ex officio Clerk of the Board of Supervisors of Alameda County, respectively, record and file a duly authenticated and certified copy of said charter amendments as provided in article XI, section 7½ of the Constitution of the State of California, and otherwise perform any and all acts required of them relative to the provisions of article XI, section 7½.

Peters, P. J., and Wood (Fred B.), J., concurred.